No. 645.

HUGH ALLISON, LIQUIDATOR, VS. FRANK THOMAS, ADMINISTRATOR, AND L. ROSENFELD.

Where a surety has alleged in his defense, a new and exonerating contract, made subsequent to the one declared on by the plaintiff, any fact in proof of the new contract, is admissible in evidence.

A confession of judgment by a principal, has on the surety, only the force of a private agreement between the principal and his creditor.

Even after a judgment against the principal, any agreement made with him by the creditor, without the assent of the surety, which defers payment, or in any wise impairs the recourse of the surety against the principal, will discharge the surety.

Orders of court should and must be executed—not at the risk and peril of the officer charged with their execution, but at the risk and peril of those who dare disregard or resist those orders.

APPEAL from the Twelfth Judicial District Court, parish of Franklin.  *Taliaferro, J.*

*Wells & Corkern,* for plaintiff and appellee.

*Morrison & Farmer,* for defendants.

The opinion of the court was delivered by

DEBLANC, J.  As receiver and liquidator of the late firm of Hugh Allison & Co., plaintiff claims from defendants, the sum of six hundred and fifty dollars, with interest thereon at the rate of eight per cent per annum from the seventh of December 1869.  His action is based on a bond furnished by one Van Thomas as principal, and Leopold Rosenfeld as his security, to release some cotton and corn sequestered from said Van Thomas, to satisfy the price of supplies advanced to him by the aforesaid firm.

That the writ of sequestration was properly granted, there can be no doubt: Thomas was certainly indebted to the firm of Hugh Allison & Co., for supplies furnished him by the latter, to enable him to carry on his plantation during the years 1869 and 1870.  The evidence of that debt was duly recorded, and, in violation of the law and his contract, Van Thomas was attempting to part with and dispose of the crop of 1869, with the view of defeating his furnishers' privilege, when they applied for and obtained an order of sequestration, commanding the seizure of said crop.

The writ of sequestration was placed in the hands of the sheriff of the parish of Franklin.  He proceeded to execute it, but the only evidence that he did, is the defendant's judicial admission that his cotton and corn were sequestered.  That admission is contradicted by the sheriff's return; for, in that return, he states that, after the seizure, the cotton, which never was in his possession, was moved in his presence and against his will, by threat and force.  We hope that this return is the last of that

description which shall be made in our State.    Orders of court should and must be executed, not at the risk and peril of the officer charged with their execution, but at the risk and peril of those who dare disregard or resist those orders.

The condition of the bond of release is that, "if the said Van Thomas, or his surety, the said Leopold Rosenfeld, shall well and truly deliver unto the sheriff of the parish of Franklin, or his successor in office, the corn and cotton sequestered by said sheriff, when ordered to do so by the court, then the bond to be void—otherwise to remain in force.    That bond was given on the twenty-ninth of January, 1870, and it was declared forfeited, and transferred to the plaintiff on the second of December 1873.

The cotton and corn passed, or rather remained in the possession of Van Thomas and Rosenfeld.    The latter disposed of the cotton and of the proceeds of its sale.    Their object was accomplished: they had substituted, in lieu of the sequestered property, one of those bonds intended as a protection to both, the debtor and the creditor, and which, now, is a danger to the creditor; a bond which, in the correct estimation of plaintiff's counsel, is always given with the invariable intention of violating its condition, and of doing the very reverse of what the parties bound themselves not to do.

It is manifest that, at the date it was subscribed, the bond sued upon was, in substance and in form, a valid bond, and that, shortly after its execution, it could have been enforced.    Has it ceased to be valid ?    Can it still be enforced ?    If not, since when and for what cause?

On the sixth of September 1870, Van Thomas moved that plaintiffs' sequestration be dissolved: his motion was tried and overruled, and, on the eleventh of March 1871, he confessed, in favor of said plaintiffs, a judgment acknowledging their claim and their privilege on the sequestered property.    By the terms of that judgment, the acknowledged claim was to be paid in four instalments maturing respectively on the ninth day of June, September and December 1871 and March 1872.    The confession made by the debtor and the delay granted by the creditor were the result of a compromise, and constituted, as to said delay, a new contract, one to which Rosenfeld was not a party and to which it does not appear that he gave his consent.

Whatever it was, that compromise suspended the creditor's action from March 1871 until November 1872.    Van Thomas died, and, at the last mentioned date, the firm of Hugh Allison & Co. brought suit on the sequestration bond, against the succession of said Thomas and Leopold Rosenfeld.    The proceedings in that suit were mislaid and a subsequent action filed against said parties, by Hugh Allison, as liquidator of the aforesaid firm.    In that action, he alleges that the succession of Van Thomas is insolvent.

Rosenfeld alone appeared in court, and, in his answer, he contends that he never was legally bound as the surety of Van Thomas, and that if he was, he has been released by the compromise already referred to and entered into between said deceased and the firm of Hugh Allison & Co. On the trial of this case, he offered to prove, by one of plaintiff's witnesses, that the consideration of Thomas' confession of judgment was that, as they became due, his (Thomas') warrants for his salary as parish judge, would be received by his creditors, in payment of their claim against him. . The evidence of that fact was rejected by the lower court, on the grounds that it is irrelevant, and that the surety could not be heard to set up defects and irregularities in the judgment.

To the ruling of the court defendant excepted.

The evidence sought to be elicited was proper and legal. It tended to show the existence of a subsequent agreement between Van Thomas and the firm of Hugh Allison & Co. The terms and the mode of payment were changed: the creditors had agreed to receive, in payment of their claim, the warrants of the parish judge, and, if established, that fact, as the delay allowed to the debtor, discharged the surety.

It is urged that a judgment had been rendered against the principal, and that the surety could not be heard to set up its defects and irregularities. This, we imagine, was not the object which defendant had in view. . He was merely striving to prove that, for the confession of that judgment and the prolongation of time, there had been a consideration, and what it was. This, he had the right to do.

As to the surety, the confession of judgment by his principal, was but the evidence and had but the value of a private agreement between the principal and his creditors, made executory by their will and consent, and not, as in other cases, by exclusively the decree of the court.

[It has been correctly held, and we adhere to that conclusion, that, though by judgment the surety becomes absolutely bound for the debt of his principal, the creditor can do no act by which the rights or recourse of said surety against the debtor may be destroyed or impaired: if he does, he releases the surety in the same manner as if no judgment had been obtained.] 3 R. R. 299.

[In law, what was the time fixed for the return of the released property, for a compliance with the obligation of the bond? Was it, could it have been one year after the rendition of the judgment recognizing the creditor's claim, the creditor's privilege? Assuredly not. That term could not, legally, extend beyond the space of time within which a judgment could have been obtained and executed.]

Instead of that, the confessed judgment itself was made payable in four distinct instalments, and one after the other the four fractions of that judgment matured, without any action on the part of the creditors.

After the delays first agreed upon, three additional delays were granted to the principal on the bond, from June 1871 to March 1872.

Were the excluded evidence before us, had defendant been allowed to prove that there was a settlement between Thomas and the plaintiff, to what irresistible conclusion would that evidence lead? That, when the creditors of Thomas ascertained that the cotton had been shipped and was out of reach, that his recognized privilege was no longer an available security, that he was left with but an action on one of those bonds which so often impeded the course of justice and the enforcement of the most legitimate rights, he exchanged the hope of recovering by that expensive action for the promise to be paid in warrants.

[Plaintiff has alleged, but has failed to prove the insolvency of the principal on the bond. If he died insolvent, when did he become insolvent? Was it before, during or after the extension of time granted by the creditor? If it was during and after the extension, when it would have been either premature or too late for any successful action on the part of the surety, the latter's liability was discharged.

In his treatise on obligations, Pothier maintained that "when the creditor accords the debtor a prorogation of time, this does not prevent the surety from acting against the debtor, and providing for his indemnity, if he perceives that the fortune of the debtor is beginning to diminish." Until 1825, this was the legislation in our State. Since then, what is the law?

"The prolongation of the terms granted to the principal debtor without the consent of the surety, operates a discharge of the latter." R. C. C, 3063.

Pending the discussion on this amendment to the Code of 1808, the jurisconsults submitted to the Legislature the following remarks:]

"Notwithstanding the respect due to an authority of such weight as Pothier, we do not think that his doctrine is in accordance with general principles, as applicable to matters of suretyship, nor that it is just to drive the surety to the recourse he indicates. The obligation which the surety contracts is to pay at the time fixed by the contract, if the debtor himself does not. This security is given for a limited time. When the time for performing the obligation arrives, the surety should have the right of insisting on the execution of the contract, that he may be discharged, or at least that he may be informed of the amount which he has to pay. To prolong his obligation beyond the term fixed, is to force him beyond his undertaking, to subject him to conditions to which he did not mean to submit. In form, it is changing his contract.

Twenty-four years ago, commenting on a case more doubtful than that submitted to our consideration, this court said: "If defendant had paid the whole of plaintiff's claim, and demanded a subrogation of his rights,

plaintiff could not have given it. By his agreement, which was a prolongation of time granted to the principal debtor, without the consent of the surety, he was estopped from present suit. Then, the co-surety's right under the contract had been changed, to the co-surety's detriment, by the act of the creditor; and, therefore, the co-surety's liability was discharged. '8 An. 75-6.

In this case, the prolongation of the term was not a mere indulgence on the part of the creditors: it is evidenced by the confessed judgment, and it was the result of an agreement which suspended the execution of said judgment, the enforcement of the claim against the debtor or his surety, and which, necessarily, not only suspended, but absolutely precluded, during the allowed delay, any payment by the surety and his subrogation to the creditor's rights.

Under these circumstances, we conclude:

1. That a new contract may have been, and, probably, was entered into between plaintiff and defendant, as to the mode of satisfying the claim of the former against the latter.

2. That, even if there was no such contract between them, a prolongation of term was granted to the debtor by the creditor, without the consent of the surety.

3. That the confession of judgment by the debtor, the division of the claim into four instalments, and the delays fixed for the maturity of each of the instalments, justify the presumption that said judgment was a final settlement between the creditor and debtor.

4. That, when the agreement took place between Van Thomas and the plaintiff, they were aware that the cotton had been shipped, the condition of the release bond violated, and that, by said agreement, the confession of judgment and the extension of time allowed and accepted, Thomas' creditors tacitly renounced to their recourse on the bond and against the surety.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is hereby annulled, avoided and reversed.

It is further ordered, adjudged and decreed that plaintiff's demand against Leopold Rosenfeld be and the same is hereby rejected, and that the costs of this appeal and of the lower court be paid by said plaintiff.

Rehearing refused.