## ALLEN *v.* O'DONALD and others.

*(Circuit Court, D. Oregon. May 8, 1885.)*

1. CREDITOR AND SURETY.

A creditor who has or acquires a lien on the property of his debtor as a security for his debt, is a trustee of the same for the benefit of the surety, if there be one, and if by any willful act of his such lien is lost or destroyed, to the injury of the surety, the latter is so far discharged from liability for the debt.

2. SAME—BURDEN OF PROOF.

When a creditor relinquishes a lien he may have on the property of his debtor, in a suit to collect his debt from the surety, the burden of proof is on him to show that the surety was not injured by such relinquishment.

3. EQUITY PLEADING—CONCLUSIONS OF LAW.

It is sometimes necessary and proper in equity pleadings to make deductions from the facts stated that are more or less conclusions of law.

Suit to Enforce the Lien of a Mortgage.

*M. W. Fechheimer*, for plaintiff.

*William H. Holmes*, for defendants.

DEADY, J. On November 1, 1871, Thomas Cross, of Salem, Oregon, gave his promissory note to the firm of Allen & Lewis, of Portland, Oregon, for the sum of $30,000, payable in three years from date, with interest at 10 per centum per annum, payable semi-annually, and to secure the payment of the same he and his wife, Pluma F., on the same day executed and delivered to said firm a mortgage on 15 parcels of land situate in Marion county, and containing in the aggregate about 3,390 acres; and on January 23, 1872, said Thomas Cross gave his promissory note to said firm for the sum of $10,000, payable in one year from date, with interest at 1 per centum per month, and to secure the payment of the same he and said Pluma F., on the same day, executed and delivered to said firm a second mortgage on the real property aforesaid, together with the south half of block 30 in Salem, and certain parts of lots 1, 2, and 3, in block

20, in said town. On September 16, 1872, said Pluma F. died. On January 22, 1876, said notes being still unpaid, said Thomas Cross and C. M. Cross, his then wife, executed and delivered to C. H. Lewis, a member of said firm, a conveyance, absolute on its face, of all said property subject to said mortgages, but upon the understanding and trust that said Lewis would farm and manage the same, and apply the rents and profits thereof upon the debts secured thereon, and that he might, with the consent of said Thomas Cross, sell and dispose of the whole or any portion of the same and apply the proceeds in like manner. On February 5, 1884, Thomas Cross died, soon after which the notes and mortgages aforesaid were indorsed and assigned by said firm to L. H. Allen, of San Francisco, a member thereof. On August 6, 1884, said Allen brought suit in this court to enforce the lien of said mortgages, alleging that there was then due on the first of said notes $45,137.04, with interest at 10 per centum per annum from December 22, 1881, and on the second $10,000, with interest from January 25, 1879, less $1,686.35 paid thereon. Sundry persons, being the administrators and heirs of Thomas Cross and E. C. Cross, Frank R. Cross and P. May Wilson, the children and heirs of Pluma F. Cross, and C. H. Lewis, are made parties defendant to the bill. On January 20, 1885, an order was made taking the bill for confessed as against all the defendants except E. C. Cross and Frank R. Cross; and on March 10, 1885, they answered the bill; the latter by the former as his guardian.

The answer admits the making of the notes and mortgages, and the amounts due on them, as alleged in the bill, except the amount due on the first note, which is stated at $45,137.04, with interest on $30,000 since December 22, 1881, instead of on the larger sum. It also admits the execution of the deed of January 22, 1876, to C. H. Lewis, but denies that it was made on any trust or understanding as alleged in the bill. The answer then states that at and before the execution of the two mortgages, and until her death, Pluma F. Cross was the owner in fee-simple of the two parcels of real property described therein as a portion of the donation of Daniel Leslie, containing 80 acres, and the donation of F. S. Hoyt and wife, containing 131 acres, and otherwise designated in the bill as parcels 14 and 15; that prior to the execution of said mortgages Thomas Cross was indebted to the firm of Allen & Lewis for money theretofore advanced to him in the sum of $30,000, which he was unable to pay, and to secure the payment of which said notes and mortgages were given; that at the urgent solicitation of her husband and the attorney of said firm, she was induced to join in said mortgage and thus "interpose her said lands as security only for said debt of her said husband." Then follow certain allegations which are excepted to by the plaintiff as impertinent. Briefly they are as follows:

(1) That it was stipulated in said mortgages that in default of payment of the notes, that they should be foreclosed as provided by law, and no other or

different mode of sale of said lands was provided therein or contemplated by the parties thereto. (2) That after the death of said Pluma F. Cross, and in November, 1876, said Thomas Cross entered into an agreement with Allen & Lewis, in pursuance of which they sold and conveyed sundry portions of said mortgaged premises contrary to the terms and conditions of said mortgages, as follows: to J. I. Thompson, 413.06 acres, for $3,834; to C. C. Kennedy, 160.02 acres, for $1,680.20; to S. R. Scott, 309.36 acres, for $3,080; in all 882.44 acres for $8,594.20, which land was then worth, and would have sold under ordinary circumstances for, $20,000; that in making said sales said parties expended $1,500 in surveys, commissions, and agents, and wrongfully charged the same to the proceeds of said sales; that no part of said proceeds were ever credited on said notes or mortgages, and that said sales were made without the consent of the defendants. (3) That the said lands of Pluma F. Cross were, at the time of said sales, and now are, worth not more than $10,000, and, the premises considered, the same ought to be released and discharged from the operation and effect of said mortgages.

It appearing, from the allegations thus excepted to, that the creditors, Allen & Lewis, voluntarily disposed of a portion of the debtor's property, on which they had a lien for their debt, at a loss or sacrifice of not less than $10,000, a sum equal to the value of the property which the defendants' mother mortgaged as a security for said debt, they claim that the same is discharged from the operation of the mortgage, and that, therefore, such allegations constitute, as to them, a good defense to the bill.

The argument in support of the exceptions is that, admitting the sale of a portion of the debtor's property at a loss, the conclusion that the property of the surety is therefore released from the effect of the mortgage does not follow, because all the property included in the mortgage is not sufficient to satisfy the debt by more than $10,000, and therefore it can make no difference to these defendants whether such sum was lost by this disposition of the debtor's property or not. They are not injured in any view of the case, because, after making due allowance for this loss, their property will still be required to satisfy the debt.

It is admitted that Mrs. Cross was only a surety in this transaction for the debt of her husband, and it is not disputed that if the creditors relinquished their lien on any portion of the debtor's property included in the mortgage, without reducing the debt in an amount equal to the value thereof, that the property of the surety is so far a discharge from the lien thereof. This rule is the result of equitable principles inherent in the relation of principal and surety, which require that the property of the former pledged to the creditor for the payment of his debt, shall, for the benefit of the latter, be applied to that purpose. A creditor with such a lien is so far a trustee for all parties concerned, and must not deprive any one of the benefit of it. Upon paying the debt, the surety is subrogated to the right of the creditor in this respect; but if, in the mean time, the latter has done anything to impair the value of such right, the former is so far discharged from his liability. Brandt, Sur. § 370; *Neff's Appeal,* 9

Watts & S. 43; *American Bank* v. *Baker*, 4 Metc. 177; *Cummings* v. *Little*, 45 Me. 187; *Hayes* v. *Ward*, 4 Johns. Ch. 129; *Baker* v. *Briggs*, 8 Pick. 129.

In *Hayes* v. *Ward, supra,* Chancellor KENT says:

"The surety, by his very character and relation as surety, has an interest that the mortgage taken from the principal debtor should be dealt with in good faith, and held in trust, not only for the creditor's security, but for the surety's indemnity. A mortgage so taken by the creditor is taken and held in trust, as well for the secondary interest of the surety, as for the more direct and immediate benefit of the creditor; and the latter must do no willful act, either to poison it, in the first instance, or to destroy or cancel it, afterwards."

But it is not stated, either in the bill or answer, what is the value of the portion of the debtor's property still covered by the mortgage, and therefore it does not appear whether or not the whole of it was sufficient, if disposed of at a fair value, to satisfy this debt, without recourse upon the surety property.

In round numbers, there is now due on these notes not less than $80,000. In the argument for the exceptions, it is claimed that the whole property included in the mortgage is not sufficient to pay the debt by a much larger sum than the alleged value of the defendants' property. And if this is so, then the defendants are not injured by what they complain of, and the allegations excepted to would be no defense to the bill, and be clearly impertinent. But the court cannot say judicially what this 3,390 acres of land is worth. It cannot assume that it is only worth $70,000, and not $80,000, though it may not fetch either sum when put up at auction. The rule seems to be that the burden of proof is on the creditor, in a case of this kind, to show that the surety has not been injured by the transaction. Brandt, Sur. § 370.

It follows that the allegations excepted to are not impertinent, but constitute a good defense to the relief prayed for as to these defendants. The plaintiff must either deny them by a replication, or confess and avoid them by proper amendments to this bill.

The further point made in support of the third exception, that the matter excepted to is a mere conclusion of law, is not well taken. It is sometimes proper and convenient in equity pleading, as a means of indicating the relief to which the party considers himself entitled, or the defense sought to be made, to make deductions from the facts stated that are more or less conclusions of law; and this seems to be the character of this allegation.

The exceptions are disallowed.