### A. K. Scott v. Llano County Bank.

No. 1449.   Decided October 23, 1905.

**1.—Mortgage of Cattle—Description—Brand.**

That a mortgage of cattle described as branded 7X on left side did not include certain ones so branded on left hip could not be determined by mere construction of the instrument itself, where the facts indicated that the mortgage was intended to include the mortgagor's entire stock in the pastures named and where they were then held, and to cover the same cattle described in a prior mortgage which included all branded 7X.   (P. 228.)

**2.—Same.**

The holder of a second mortgage on cattle having consented to their sale and delivery to the holder of the first, at a fixed price per head, the proceeds to be applied to the satisfaction of the incumbrances, apprehending that the mortgagor would not deliver all the cattle, refrained from interfering to see that all were delivered on assurance from the holder of the first mortgage that he would see that none were left out in the delivery. The mortgagor kept back and appropriated some of the cattle, claiming that they were not covered by

the second mortgage, the holder of the first mortgage making no effort to secure their delivery. The proceeds met the first but only part of the second mortgage. Held, that by such undertaking the prior mortgagee became charged with a duty to use due diligence to obtain possession of and apply all the property to the secured debts, and was liable for any loss to the second mortgage from failure to use such diligence; and that it was not necessary to show collusion between him and the mortgagor to establish such liability. (Pp. 228-230.) .

### 3.—Evidence—Diligence.

It was competent to prove that the mortgagor stated to the holder of the prior mortgage that the entire number of cattle named in the mortgage would be delivered, on a sale by former to the latter to meet both incumbrances, as bearing on the diligence exercised by the latter, who had undertaken to protect in such delivery the interest of a second mortgagee, and when it appeared that there was a considerable shortage. (P. 230.)

### 4.—Evidence—Declarations—Impeachment.

Declarations of one not a party to the suit and not made in the presence of a party are inadmissible except to contradict his testimony and after due predicate is laid for such impeachment. (P. 230.)

Error to the Court of Civil Appeals for the Third District, in an appeal from Llano County.

Scott sued the bank, appealed from a judgment for defendant, and on affirmance obtained writ of error.

*McLean & Spears,* for plaintiff in error.—Defendant's contention being that all the cattle branded 7X on the hip were counted in the 908 head covered by the mortgage to American National Bank and to the defendant, A. K. Scott, the declaration of the mortgagor, J. B. Middlebrooks, just before the sale to T. J. Moore, that said cattle were counted in and covered by said mortgages, should have been admitted as original evidence.

Declarations of person through whom parties claim made while title was in him are admissible. Hancock v. Tram Lumber Co., 65 Texas, 233; Ellis v. Stone, 4 Texas C. A., 164.

The said J. B. Middlebrooks having testified by depositions that said cattle branded 7X on the hip were not included in said 908 head of cattle covered by said mortgages, the statement by him to the witness, J. D. Slator, that said cattle branded 7X on the hip were counted in and covered by said mortgages was admissible as being a contradictory statement made by and tending to impeach the plaintiff's witness, J. B. Middlebrooks. Witness' previous declarations, although hearsay, are admissible to impeach his testimony. Galveston, etc., Ry. Co. v. Jackson, 93 Texas, 266; Norton v. Maddox, 66 S. W. Rep., 321.

There being 908 head of cattle covered by the mortgages, and the shortage not being accounted for, what Middlebrooks claimed, at the time of the sale, as to the number of the cattle on hand, is a circumstance bearing upon the question of whether or not there was in fact a shortage in the number of cattle.

If the plaintiff, Llano County Bank, on May 2, 1903, was the owner and holder of the note given by J. B. Middlebrooks to American National Bank for $9,080, and secured by first mortgage on 908 head of cattle,

including all the cattle branded 7X, and that defendant, A. K. Scott, had a second mortgage on all or a part of said cattle, and the said J. B. Middlebrooks was the principal maker of, and A. K. Scott was only surety on this note sued on, and said Middlebrooks was then actually insolvent, and those facts were then known to plaintiff, then the plaintiff had no right to release any of the cattle covered by the said first mortgage, which it did, whether same were covered by second mortgage or not, and this was made an issue by the pleadings and evidence, but such issue was not correctly submitted in the court's charge to the jury. Kiam v. Cummings, 13 Texas◦C. A., 199; Murrell v. Scott, 51 Texas, 526.

The court's charge to the jury was confusing and misleading in that it submitted issues not raised by the pleadings and the evidence, and made defendant's right to depend upon the number of cattle received by plaintiff, when there was no contention, by pleading or proof, that plaintiff, Llano County Bank, or the members of its firm as such, had purchased or received any of the cattle in question. Cannon v. Cannon, 66 Texas, 686; Saunders v. Weeks, 55 S. W. Rep., 33.

The court erred in charging the jury, in substance, that "defendant would be entitled to receive credit on the note herein sued on for such sum as the cattle actually received by plaintiffs would amount to after said debts aforesaid were paid, and which were actually received by plaintiffs," for the reason same was confusing and misleading to the jury as there was neither pleading nor evidence to base such a charge upon.

The defendant, A. K. Scott, being surety on the note sued on, for J. B. Middlebrooks, and said J. B. Middlebrooks being insolvent on May 2, 1903, and those facts being then known to plaintiff, the defendant had a right to have all the cattle covered by said first mortgage, including those branded 7X on the hip, applied to the payment of said $9,080 note and other debts mentioned, and the court erred in charging the jury, in substance, that defendant did not have such a right. Willis v. Holland, 13 Texas C. A., 693; Henkel v. Bohnke, 7 Texas C. A., 19; Wahrmund v. Edgewood Dist. Co., 32 S. W. Rep., 228.

The defendant, A. K. Scott, being surety on the note sued on for J. B. Middlebrooks, and said J. B. Middlebrooks being insolvent on May 2, 1903, and these facts being then known to plaintiff, and the issue being fairly and clearly raised by the pleadings and the evidence, the court erred in refusing to give special charge No. 1, asked by the defendant, to the effect that defendant had the right to have applied to the payment of the note given the American National Bank, etc. Willis v. Holland, 13 Texas C. A., 693; Henkel v. Bohnke, 7 Texas C. A., 19; Wahrmund v. Edgewood Dis. Co., 32 S. W. Rep., 228.

The defendant erred in charging the jury that out of the cattle covered by defendant's second mortgage the $9,080 note and all pasturage due on said cattle, not exceeding $700 should have first been paid, without regard to the cattle covered by said first mortgage and then held by Llano County Bank, then that the proceeds of all cattle owned by the said J. B. Middlebrooks branded 7 on left side, 4 on right hip, and 7X

on left side, situated in Llano County in what is known as the Kuykendall and McCuiston pastures, on the 21st day of November, 1902 (not permitting them to take into account such as were located in the Middlebrooks pasture), over and above the number sufficient to pay the above named debts, should be credited on the note herein sued on, provided they were delivered by the said J. B. Middlebrooks, or his agent and accepted by plaintiffs under the terms of the sale agreed to by and between Middlebrooks, plaintiffs and defendant, notwithstanding the uncontroverted evidence shows that plaintiff and its several members, knew at the time that defendant was surety on the note sued on for J. B. Middlebrooks, and that said J. B. Middlebrooks was then insolvent.

The said J. B. Middlebrooks being insolvent and being the principal maker of the note sued on, and the defendant being only surety for him, which facts were well known to plaintiff, the jury should have been charged that all cattle covered by the first mortgage, and which may not have been covered by the second mortgage, should have been first applied to the payment of said $9,080 note, before resorting to the cattle covered by the second mortgage. Willis v. Holland, 13 Texas C. A., 693; Henkel v. Bohnke, 7 Texas C. A., 19; Wahrmund v. Edgewood Dis. Co., 32 S. W. Rep., 228.

The court erred in his charge to the jury in limiting defendant's right to be accounted to for the cattle described in his said second mortgage, and actually owned by J. B. Middlebrooks, without reference to the cattle covered by said first mortgage so held by plaintiff, Llano County Bank, and without reference to whether or not J. B. Middlebrooks had the right to mortgage such cattle as he may not have owned, and without reference to whether or not any valid adverse claim had been made to any of such cattle.

The court erred in his charge to the jury in submitting the issue of conspiracy raised by the pleadings and the evidence, and in refusing to give to the jury special charge No. 2, asked by defendant.

The said A. K. Scott being surety for the said J. B. Middlebrooks, and the said J. B. Middlebrooks being insolvent, all of which was known to plaintiff, and the plaintiff having fraudulently conspired with said Middlebrooks and to force said Scott to pay the note, and having in fact released a part of the security held by plaintiff, the said plaintiff forfeited its right to collect said note from the surety, A. K. Scott, and defendant's special charge No. 2, should have been submitted to the jury.

Surrender of property of principal held by creditor releases surety. Kiam v. Cummings, 13 Texas C. A., 199; Murrell v. Scott, 51 Texas, 526.

The court erred in overruling defendant's motion for a new trial, for the reason the verdict and judgment rendered herein are contrary to the law, and against the evidence, in this: (1) J. B. Middlebrooks was the principal on the note sued on, and the defendant, A. K. Scott, was his surety; (2) on and prior to May 2, 1903, J. B. Middlebrooks was actually and notoriously insolvent; (3) plaintiff, Llano County Bank, and its members, had full notice and knowledge, on and prior to said

May 2, 1903, of such suretyship and insolvency; (4) on May 1, 1903, plaintiff, Llano County Bank, acquired and became the owner of said $9,080 note secured by said first mortgage on said 908 head of cattle, and their increase, including all the cattle branded 7X on the hip; (5) plaintiff, Llano County Bank, and its members, knowingly permitted the said J. B. Middlebrooks to retain and carry away from Llano County, and out of the State of Texas, all of said cattle branded 7X on the hip, and which were covered by the mortgage held by said Llano County Bank to secure said $9,080 note, and which defendant had a right to have applied to the payment of said note and pasturage before the cattle covered by his second mortgage should be so applied; (6) the evidence conclusively shows a conspiracy between the plaintiff and T. J. Moore, W. J. Moore and J. B. Middlebrooks, to wrong and defraud this defendant, and this defendant was wronged and defrauded by them, by reason of the fact that a part of said cattle were not applied to the payment of said note.

*Flack & Dalrymple* and *S. R. Fisher,* for defendant in error.— Plaintiff in error, in this assignment and throughout the argument in support of his brief and application assumes, as a fact established and uncontroverted, that the first mortgage to the American National Bank covered, besides the cattle embraced in the Scott mortgage, other cattle. This assumption is not borne out by the record; the instruments themselves and all parol evidence, as we contend, establishing conclusively that the same cattle were embraced in both mortgages and that no cattle were covered by the first mortgage which were not embraced in the second.

While the cattle were subject to the lien of the two mortgages, Scott, on May 2, 1903, with the consent of the Llano County Bank and of T. J. Moore and W. J. Moore, constituting such firm, in writing authorized and empowered Middlebrooks to sell to T. J. Moore the cattle upon which he held a second mortgage, and on which the Llano County Bank and the members thereof, held a first mortgage, upon certain terms indicated in the instrument of authority, and to make application of the proceeds as therein stated—that is, to apply them, first to the payment of the debt secured by the first mortgage, $9,080; next, to the payment of pasturage not to exceed $700, and the remainder as a credit on the $2,138.75 note.

Clearly, this instrument was a relinquishment by Scott of any rights theretofore existing in him under and by virtue of his second mortgage, and discharged the cattle therein described from its lien. Scott thereby waived his right to proceed under his mortgage or to assert the same and conferred upon Middlebrooks the power and authority to make the sale to T. J. Moore.

As an absolute condition precedent to entitle Scott to invoke for his protection the application of the equitable remedy of marshaling securities, he must, at the time when he sought to have such application made, have been the holder of a valid subsisting lien, which it devolved upon

him to plead and establish, and the proof showing that he had released the cattle covered by his mortgage from the lien thereof prior to their sale, made with his consent and by his authority, he can not complain of any failure of the court to direct that the cattle, if any, upon which the bank and the Moores held a mortgage, should be sold before proceeding to sell the animals embraced in the Scott mortgage, even if it be assumed, against the fact, that the bank mortgage embraced cattle not covered by the Scott mortgage. 19 Am. & Eng. Enc. Law (2d ed.), 1256, 1257, 1259, 1264, 1265, 1265b.

While it is believed that the Court of Civil Appeals erred in declining to consider the bills of exception as to the exclusion of testimony offered by the defendant because embraced in the statement of facts (see second specification of error in application, being second and third assignments of error in appellant's brief), still it is insisted that such action does not constitute reversible error, as the testimony offered was not admissible. The testimony of J. D. Slater was offered to prove declarations made to him by J. B. Middlebrooks in the absence of the plaintiffs to the effect that all the cattle branded 7X on the hip were included in the mortgages. Neither of the plaintiffs was present and heard these declarations; they were mere hearsay and there being no evidence of a conspiracy between the Moores, or either of them, and Middlebrooks, such statements could not be admissible as a declaration of a coconspirator. Further, the testimony had a tendency to vary a written instrument and could not be allowed to have such effect; and, further, if offered for the purpose of impeaching Middlebrooks, no proper predicate had been laid, nor was any attempt made to do so.

In regard to the effort to establish by T. J. Moore that Middlebrooks had told him at the time he purchased the cattle that there would be a full 908 head, the testimony was immaterial and had no tendency to establish any issue in the case.

WILLIAMS, ASSOCIATE JUSTICE.—A partnership composed of T. J. Moore and W. J. Moore, and doing business under the name of Llano County Bank, brought this suit against J. B. Middlebrooks and A. K. Scott, to recover the amount of a note of which they were the makers, at six months, to plaintiffs by their firm name, of date November 21, 1902, for the sum of $2,138.75. While upon the face of the note Middlebrooks and Scott were joint and several makers and principals, Scott pleaded that in fact he signed for the accommodation of Middlebrooks, and that as between themselves he was only a surety, and set up as a defense certain transactions, which will be stated, between the bank, Middlebrooks and himself. No further statement of the pleadings is necessary than that they raised the questions discussed.

The transactions upon which the points to be decided depend were as follows: On June 7, 1902, Middlebrooks executed to the American National Bank, of Austin, his note for $9,080, payable at six months, to secure which he at the same time executed his trust deed upon certain cattle, describing them, as held in the Middlebrooks, McCuistion and Kuykendall pastures in Llano County, Texas, amounting to 908 head, of which some were branded 7X, some were branded 7, and others were

branded 4, the number, age and class of the animals in each brand being given. The mortgage also covered the increase of cattle. On November 21, 1902, Middlebrooks had become indebted to plaintiffs in the sum of $2,138.75, and for this the note sued on was given, Scott, to the knowledge of plaintiffs, signing for Middlebrooks' accommodation. At the same time, Middlebrooks executed to Scott a mortgage to secure him as against liability as surety, which mortgage described the property included in it as follows: "The following described property situated in the county of Llano, and State of Texas, to wit: 908 head of mixed cattle branded in one or the other of the following brands, to wit: 7 on left side, 4 on right hip, or 7X on left side, said cattle being now situated in said Llano County, in what is known as the Kuykendall, McCuistion and Middlebrooks pastures, and being all the cattle owned by the said Middlebrooks in above mentioned brands. This mortgage is subject to two others, one given to American National Bank, of Austin, Texas, to secure $9,080, dated June 7, 1902, the other given to secure J. D. Slater in payment of note for $5,000, dated June 3, 1902, and due November 30, 1902. Together with all increase thereof, and accretions or additions thereto." Thereafter, and prior to May 2, 1903, plaintiffs became the owners of the note given by Middlebrooks to the Austin bank, which may be called the first note, and were at the date last given owners of both it and the second note. After some negotiations between the plaintiffs, Middlebrooks and Scott, looking to a sale of the cattle by Middlebrooks to T. J. Moore, and an application of the proceeds to the two notes, Scott, on the 2d day of May, 1903, signed the following writing, all of the parties agreeing to the proposed sale: "Llano, Texas, May 2, 1903. Mr. J. B. Middlebrooks, Llano, Texas. Dear Sir: In regard to the sale of your cattle on which I hold a second mortgage, will say I agree for you to sell the cattle to T. J. Moore upon the following terms: 185 head of the two year old steers at $14, the remainder of the steers at $10 per head, and the stock cattle at $13 per head, no calves counted, provided that the proceeds be applied to the payment of the first mortgage on said cattle of $9,080, and not exceeding $700 to be paid as pasturage, and the remainder of the proceeds to be applied as a credit on the note against you held by Llano County Bank, on which I am security. Yours truly (signed), A. K. Scott."

Under this understanding 776 of the cattle covered by the mortgages were accounted for by plaintiffs as having been delivered by Middlebrooks to T. J. Moore, and the proceeds at the agreed price were applied to the discharge of the first note and the charges for pasturage, leaving only a balance of $219.60, which sum was applied as a credit on the second note; and by the judgment below plaintiffs recovered the balance.

The defense to which the evidence was principally directed was that, through the fault of plaintiffs, some of the cattle, subject to the two mortgages, were not so delivered but were carried out of the state by Middlebrooks and put beyond Scott's reach. That Middlebrooks did carry cattle away to the Indian Territory is an admitted fact; but whether or not any of them were subject to the mortgages, and, if so, whether or not plaintiffs are responsible to Scott for their loss, are the chief controversies. With reference to the first point the evidence, upon

which we forbear comment, was at least sufficient to warrant a finding by a jury that some of the mortgaged cattle were appropriated by Middlebrooks, who was and is insolvent, and taken out of Scott's reach. It is claimed that some of those carried away did not belong to Middlebrooks at the date of the mortgages, and this, of course, raises only a question of fact. It is further asserted, however, that some cattle in the named pastures which did belong to Middlebrooks and were branded 7X on the left hip were not within the descriptions in the mortgages, and it is probable that some of the rulings of the trial court were induced by this opinion. It is therefore proper that the views of this court upon the subject be expressed at this point. It is evident from the reference in Scott's mortgage to the two previous ones, as well as from the testimony, that the three were given upon the same 908 head of cattle. If the first mortgage covered the animals with the brand 7X on the hip, Scott's mortgage likewise covered them. So slight a circumstance as that the latter mortgage mentioned only the animals branded 7, 4 and 7X on the left side can not be allowed to restrict the operation of the lien upon all of the 908 head if they can be otherwise identified, and this may be done by ascertaining those to which the first mortgage applied. It is shown by the testimony of Middlebrooks that, by actual counting, he had 908 head in the three pastures when the last named lien was given. If those in question were then in the pastures, and were necessary to make up the number called for, it is evident that the mortgages applied to them. It is thus seen that these cattle can not be excluded by mere construction of the face of the instruments, and that the operation of the latter must be determined by the facts existing when the first was given. As the record stands, all of these cattle appear to be covered, because the only evidence on the subject indicates that Middlebrooks owned 908 head and no more. As to plaintiffs' liability to account for any of the mortgaged cattle that may have been thus carried away, the evidence tends to show that when the writing authorizing the sale was signed by Scott, which was on Saturday, he requested plaintiffs and Middlebrooks to notify him when and where the stock would be gathered and delivered, in order that he might be present and assist, and was told by Moore that he did not know when the work would be done but that it would not be commenced sooner than the following Monday; that the gathering was begun on the next day (Sunday), and continued under the supervision of Moore and his agent, until completed; that the animals were gathered in bunches and held at different places, so that Scott had not the opportunity of ascertaining what ones were delivered; that he asked both Moore and Middlebrooks to give him a statement of the numbers and classes of animals delivered, and could get none until after the property had been removed. Scott further states that about four or five days after the writing was signed he had cause to suspect, and told T. J. Moore that Middlebrooks was about to carry away some of the mortgaged cattle; and thus states what occurred between them. Moore said: "You stay here and let me go see Middlebrooks, and I will see that he don't take anything but what he has a right to take, and if he had any of the cattle you shan't lose anything by it." I (Scott) asked him if he had let Middlebrooks have any of the

cattle, and he said no, that he had let his family milk ten head while they were here, but that all the cattle were to go in on the sale. When he said he would go and see about Middlebrooks shipping some of the cattle away to the territory, he told me to let him see to that, and he would see that everything came up all right, and he went away, and never said anything further to me about the matter." On the same subject T. J. Moore testified: "I knew he (Middlebrooks) took other 7X cattle which he said was not covered by the mortgages; I don't know how many he took away. I told A. K. Scott that I would see that J. B. Middlebrooks did not take away any of the cattle which were covered by the mortgages, without same being accounted for. I don't know what he took away. He told me he was going to take some of the 7X cattle away, and so far as I know he did. He did not claim anything in the 4 and 7 brands, but claimed some of the 7X cattle were not covered by the mortgage. . . . I was afraid of trouble between Middlebrooks and Scott; they both seemed to have their stingers out, and I thought when they met the trouble would come off. . . . Everything covered by the American National Bank and Scott mortgages was to be counted in the sale made from Middlebrooks to me. . . . I remember Scott coming to me and saying that he understood that Middlebrooks was fixing to ship some of the cattle, and then I told him to stay there and I would see to it that he did not take anything away that he did not have a right to take away, and I went off but never reported back to him what I learned about the matter. I told him to let me tend to it and for him just to leave it to me. I told Scott that I had not let Middlebrooks have any of the cattle, and I did not until Middlebrooks told me how it was. I knew he cut out the 7X on the hip cattle to ship off; he claimed they were not in the mortgages, and I just took his word for it. I let him take everything he claimed, and did not try to keep him from taking the cattle."

It is unnecessary that we should consider what would have been the duties and responsibilities of the plaintiffs had the evidence shown no more than the consent of Scott to the proposed sale as evidenced by the writing signed by him. That was only a part of the transaction. Consistently with it, the assumption by either party of the duty of collecting and applying the cattle may be shown, and the evidence from both sides is that this duty was undertaken by plaintiffs. It can not be doubted, if this testimony states the facts truly, that plaintiffs became charged with a duty to Scott, and that duty was to ascertain the cattle subject to the mortgages, and to at least use diligence to obtain possession of and apply them to the secured debts. Plaintiffs owned the principal mortgage and had as good opportunity as Scott had to know the property covered by it, and when they assumed the management of the transaction and made the promises stated, their duty was not only to account for the value of the property delivered to them, but to use reasonable diligence to secure all that was called for by the mortgages; and for any loss sustained by Scott which such diligence on their part would have prevented, they were liable to him. We speak of this as a duty and liability of plaintiffs, because there is no contention that T. J. Moore was not throughout the entire transaction acting in the interest of

the partnership. The charge of the trial court excluded from the consideration of the jury this element of liability, by instructing that plaintiffs were bound only to account for the value of the cattle actually received by them unless the jury should find, on other issues made by the pleadings and evidence, that there was collusion between plaintiffs and Middlebrooks to allow the latter to deprive Scott of a part of his security, or to apply it to other debts of his to plaintiffs. These latter facts were not essential to the completeness of the defense which we have discussed. It is true that the court, in the latter part of the charge, instructed, in substance, that if plaintiffs exercised ordinary prudence in allowing Middlebrooks to carry off some of the cattle they would not be liable; but gave no instruction under which Scott could recover anything for a failure to perform the duty which we have defined; and previous instructions restricted Scott's right to a credit for such cattle as were received, unless other defenses were sustained. We are of the opinion also, that the question which Scott's counsel asked T. J. Moore, intended to elicit the statement that Middlebrooks at the time of the sale said to Moore that there would be full 908 head of the cattle, should have been permitted. The proposed evidence might have some weight in determining the question of plaintiffs' diligence when it appeared that there was a considerable shortage. The statement of Middlebrooks to Slater, not made in the presence of plaintiffs, that the cattle branded 7X on the hip were counted in and included in the mortgage to the American National Bank, was not admissible against plaintiffs. It does not appear that any predicate had been laid for the use of the statement to contradict the testimony of Middlebrooks.

Many complaints are made of the charge of the court in a general way without pointing out the particular parts referred to, and these can not be considered.

What we have said will be sufficient for the submission of the cause at another trial. The Court of Civil Appeals properly disposed of the assignment to the overruling of the general demurrer to the petition. For the error in the charge of the court, the judgment must be reversed.

*Reversed and remanded.*