**THOMPSON et al. v. WELDERS SUPPLY CO.**

No. 4417.

Court of Civil Appeals of Texas. Amarillo.

May 6, 1935.

H. H. Smith, of Panhandle, for plaintiffs in error.

Jos. H. Aynesworth, of Stinnett, for defendant in error.

HALL, Chief Justice.

The Welders Supply Company filed this suit against Karl B. Krapf to recover upon an account in the sum of $2,252.35. A writ of attachment was issued and levied upon the following described property: One International truck, motor No. 4SL–48792; one air compressor; one sheet-iron building, 20 x 100 feet; and one International truck, motor No. KB–165907. Krapf. replevied the truck No. 4SL–48792 and the air compressor by delivering to the sheriff his replevy bond, with the appellants, L. A. Thompson, C. J. Oates, E. J. Lewis, Mary Carlock Clutter, and Dr. B. F. Clutter as sureties. The sheriff valued the truck at $900 and the air compressor at $500, but did not value the other property. The condition of the replevy bond is the language of the statute, article 292: "should the defendant be condemned in the action at bar, he shall satisfy the judgment rendered therein, or pay the estimated value of the property replevied, plus interest."

Krapf answered, and the case was tried November 25, 1932. The jury failed to agree upon a verdict and a mistrial was declared. No further action was taken until January 31, 1934, when the plaintiff supply company, through its attorneys, entered into a written agreement with Krapf in substance as follows: That the cause should remain inactive on the docket of the court until the July term, 1934, and that on July 9th a judgment might be entered against Krapf for the full amount of the debt as set out in the petition, less credits for such amounts as he might thereafter pay. That the judgment should be rendered foreclosing the attachment lien upon the iron building described in the sheriff's return. That the attachment should be and was at that time released as to the truck described in the sheriff's return as motor No. KB–165907, with possession thereof and redelivery of it to the defendant free from such attachment lien. The agreement further provides that all voluntary payments made by Krapf are to be first applied to that part of the obligation which the replevy bond and attachment was. given to secure until such replevy obligation be fully discharged. That should the defendant Krapf voluntarily pay as much as 50 per cent. of the obligation, as it then exist-

ed, on or before August 1, 1934, whether before or after judgment, that execution for the remainder should then be stayed for six months from the date of the judgment. The sum for which judgment was rendered indicates that Krapf made no payments on the account. Judgment was thereafter entered on July 12th in favor of the plaintiff and against Krapf for $2,252.96, with lawful interest from the 1st day of January, 1932.

The judgment recites the issuance of the attachment, that it was levied upon property, among other things being one International truck motor No. 4SL–48792, which was valued by the sheriff of Hutchinson county at $900, and also upon one air compressor valued by the sheriff at $500; that thereafter, on the 23d day of December, 1931, the defendant Krapf executed and delivered to the sheriff his replevy bond as provided by law, whereupon the sheriff delivered said truck and compressor to him; and it further appearing that L. A. Thompson, E. J. Lewis, Mary Carlock Clutter and her husband, Dr. B. F. Clutter, all of Borger, and C. J. Oates of Stinnett, were sureties thereon, that said bond was in the penal sum of $2,800, conditioned as provided by law, and was filed with the papers in this case in December, 1931, judgment was rendered in favor of the plaintiff against Krapf, as principal, and the above-named sureties, jointly and separately, in the sum of $1,400, with lawful interest thereon from the 23d day of December, 1931, awarding execution against all of said parties for the collection of said $1,400. The judgment further forecloses the attachment lien upon the frame sheet-iron building described in the sheriff's return in accordance with the agreement hereinbefore set out. The judgment further recites that the attachment lien is released upon the truck, motor No. KB–165907, together with the equipment thereon, and it was decreed (in accordance with the agreement) that the attachment should not be foreclosed upon said truck.

The sureties upon the replevy bond have, by writ of error duly filed, brought the controversy to this court for review.

Plaintiffs in error insist: (1) That they are not liable under the terms of the bond until the defendant Krapf has been condemned in the suit, and that an agreed judgment entered without their consent, by the terms of which Krapf regained possession of one of the trucks, does not condemn

him within the meaning of R. S. art. 292; (2) that they are released because, without their consent, the agreement extended, for a valuable consideration, the time by postponing rendition of judgment and staying execution for six months thereafter, changed the terms of their obligation, and discharged them from liability; (3) that they are also discharged by the release of the attachment lien on one of the trucks by their principal without their consent because it was part of the security for the debt, and its release enlarged their liability and varied the contract. Plaintiffs in error assert in their assignment that the agreement was the result of collusion between defendant in error and Krapf. There is no statement of facts in the record, and nothing to show actual or positive fraud. The fraud, if any, is constructive or legal, in that the right of plaintiffs in error, as sureties, had been materially affected by the terms of the agreement and judgment, regardless of the intent on the part of defendant in error or Krapf. Scott et al. v. Llano County Bank, 99 Tex. 221, 89 S. W. 749.

Whether the entry of the judgment by consent was a condemnation of Krapf, within the meaning of the statute, is questionable. We do not think it necessary to decide that point.

R. S. art. 292, provides that in attachment cases the defendant may replevy the property taken under the writ, or any part thereof. We have found no case, and are referred to none, where only a part of the property was taken by the writ and replevied, and where the creditor and debtor, principal in the replevy bond, subsequently released any of the property levied upon.

The general rule is that relinquishment or loss of funds or securities by the creditor prevents a recovery against the surety, to the extent of the value of the securities relinquished, and the rule applies to judgments and executions and to property which has been taken in possession under attachment liens. Harrison Machine Works v. Templeton, 82 Tex. 443, 18 S. W. 601; First Nat'l Bank v. Alexander (Tex. Civ. App.) 4 S.W.(2d) 298; Lee v. First Nat'l Bank of Purdon (Tex. Civ. App.) 254 S. W. 394; 50 C. J. 162, § 263; U. S. F. & G. Co. v. Presnal (Tex. Civ. App.) 80 S.W.(2d) 337.

Stearns on Suretyship (3d Ed.) 137, says that if the creditor has a lien upon the property of a principal, the creditor at once

becomes charged with the duty of retaining such security or maintaining such lien in the interest of the surety, and any release or impairment of this security as a primary resource for the payment of the debt will discharge the surety to the extent of the value of the property or lien released. This is not because the parties have made any contract in respect to the additional security, but it results from the inherent equities of the suretyship relation. This rule is sustained by citation of numerous authorities from various jurisdictions.

He further says (p. 138) that if, in the process of collecting the debt by proceedings at law, the creditor does secure a lien by execution or attachment or otherwise, there immediately arises a trust relation between the parties, and the creditor, as trustee, is bound to account to the surety for the value of the security in his hands, and if the security is released, the burden is upon the creditor to justify his relinquishment of securities by showing the worthlessness of the property or lien released, citing Moss v. Pettingill, 3. Minn. 217 (Gil. 145) ; Dunn v. Parsons, 40 Hun (N. Y.) 77 ; Allen v. O'Donald (C. C.) 23 F. 573.

After the judgment was rendered against them, the plaintiffs in error had two remedies, one by appeal or writ of error, to which they have resorted, and the other by instituting a direct action in the nature of a bill of review to set aside the judgment. Resort to the latter remedy would have enabled them to prove the value of a truck which was released. There is no evidence showing its value.

The extension of time resulting from postponing the entry of judgment and providing therein for a stay of execution for six months and its effect upon the liability of plaintiffs in error is a question with reference to which the cases in this state are not in tuneful accord.

It is said in Lee v. Hastings, 13 Neb. 508, 14 N. W. 476, that sureties on a replevin undertaking undoubtedly are concluded by the judgment in replevin. That is, if the court finds the right of property or right of possession in one of the parties, the sureties cannot attack such judgment collaterally where there is no collusion or fraud to evade his liability on his undertaking, but they are liable only to the extent that they are made so by law, and such liability cannot be increased by any agreement of the attorneys for the parties to which the sureties do not consent.

In Allison v. Thomas, 29 La. Ann. 732, it was held that the confession of judgment by a principal, acknowledging a claim as to sequestered property, is not conclusive on the sureties on the sequestration bond, and that such confession of judgment is but the evidence of and has but the value of a private agreement between the principal and his creditors.

The general rule was announced in U. S. F. & G. Co. v. Clifton (Tex. Civ. App.) 250 S. W. 1056, by a majority opinion of the Fort Worth Court, that an agreed judgment rendered against a principal defendant and his sureties on a replevy bond, providing for a stay of execution, is not void as to the nonconsenting surety in view of R. S. 1911, art. 258, and Vernon's Sayles' Ann. Civ. St. 1914, art. 2393. The cases pro and con were reviewed in the majority opinion by Judge Buck and the dissenting opinion by Judge Conner. A writ of error was granted and subsequently was dismissed for want of jurisdiction. The result of our investigation is that upon that question there is some conflict and we are left in doubt and uncertainty.

The following cases, and others cited therein, announce the doctrine clearly that an extension of time by the principal and creditor for a valuable consideration discharges the surety upon bonds of this character and other obligations from all liability: Wybrants v. Lutch et al., 24 Tex. 309 ; Pilgrim v. Dykes, 24 Tex. 383, 384 ; Jenkins v. McNeese, 34 Tex. 189, 190 ; Short v. Shannon (Tex. Civ. App.) 211 S. W. 463 ; Wylie v. Hightower, 74 Tex. 306, 11 S. W. 1118 ; Wright v. A. G. McAdams Lumber Co. (Tex. Com. App.) 234 S. W. 878 ; Reliable Iron Works v. First State Bank & Trust Co. (Tex. Civ. App.) 241 S. W. 592 ; Yeary v. Smith, 45 Tex. 56. The following cases seem to either limit, vary, and in some instances deny, the rule: Gerlach & Bro. v. Du Bose (Tex. Civ. App.) 210 S. W. 742 ; Siddall v. Goggan Bros., 68 Tex. 708, 5 S. W. 668 ; Clayton v. Stephenson (Tex. Civ. App.) 254 S. W. 507. In view of the disposition we make of the case, it will not be necessary for us to decide this question.

■ When the sureties signed the replevy bond, they had the right to assume that appellee and their principal, Krapf, would not deal unjustly with them or make any agreement detrimental to their rights. They filed no answer in the case, entered no appearance, nor were they represented

by counsel. Under the terms of the statute they were not required to do either. Because the agreed judgment was rendered without their knowledge or consent, under the circumstances existing, we believe the ends of justice will be better subserved by reversing and remanding the cause in order that they may be allowed to prove, if they desire, the value of the truck which has been released, or institute a direct proceeding, in the nature of a bill of review, and offer evidence, if any they have, upon the issue of collusion and fraud. It is clear from the record that the case has not been fully developed, and because of the peculiar circumstances, the proper course is to reverse the judgment and remand the cause for a new trial, and it is accordingly so ordered. 3 Tex. Jur. pp. 1219–1224, §§ 854, 855; Waggoner v. Herring-Showers Lumber Co., 120 Tex. 605, 40 S.W.(2d) 1; Great So. Life Ins. Co. v. Heavin (Tex. Com. App.) 39 S.W.(2d) 851; Fischer v. Fischer (Tex. Civ. App.) 57 S.W.(2d) 314; Stolaroff v. Campbell (Tex. Civ. App.) 18 S.W.(2d) 838; Limestone County v. Robbins (Tex. Civ. App.) 42 S.W.(2d) 159; Dominguez v. Garcia (Tex. Com. App.) 53 S.W.(2d) 459.

Reversed and remanded.