ST. LOUIS, B. & M. RY. CO. v. VERNON.

(Court of Civil Appeals of Texas. Galveston. Oct. 30, 1913. Rehearing Denied Nov. 20, 1913.)

1. MASTER AND SERVANT (§ 278*)—INJURIES—SUFFICIENCY OF EVIDENCE—NEGLIGENCE.

Evidence in a railroad engineer's action for injuries in a collision of his train with another standing on the main track at a station *held* to sustain a finding of negligence in failing to have the other train on the side track, or, if not, of negligence in failing to warn plaintiff that the main track was obstructed, and in not turning the switch for the side track.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.*]

2. MASTER AND SERVANT (§ 276*)—INJURIES—EVIDENCE—PROXIMATE CAUSE.

Evidence in an action for injuries to a railroad engineer in a collision of his train with another standing on the main track *held* to sustain a finding that negligence in not having the other train on siding, or in not warning plaintiff that the main track was obstructed, and turning the switch for the siding, was the proximate cause of plaintiff's injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 950–952, 954, 959, 970, 976; Dec. Dig. § 276.*]

3. STATUTES (§ 221*)—LEGISLATIVE KNOWLEDGE OF LAW—PRESUMPTIONS.

It will be presumed that the Legislature knew, when it enacted the Employers' Liability

Act (Acts 31st Leg. [1st Extra Sess.] c. 10; Rev. Civ. St. 1911, § 6649), that contributory negligence would bar a recovery by an employé.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 293, 299; Dec. Dig. § 221.*]

**4. NEGLIGENCE (§ 101*)—CONTRIBUTORY NEGLIGENCE—DIMINUTION OF RECOVERY—EMPLOYERS' LIABILITY ACT.**

Acts 31st Leg. (1st Extra Sess.) c. 10 (Rev. Civ. St. 1911, art. 6649), providing that an employé's contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of his negligence, only denies recovery because of contributory negligence to the extent that the jury determines is attributable to his negligence.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 85, 163, 164; Dec. Dig. § 101.*]

**5. NEGLIGENCE (§ 141*)—COMPARATIVE NEGLIGENCE—INSTRUCTIONS.**

An instruction, in a railroad employé's action for personal injuries, that, if any negligence of plaintiff and any negligence by defendant were concurrent proximate causes of the injuries, the jury should diminish plaintiff's damages in proportion to the amount of negligence attributable to him was not misleading as permitting a recovery, if the jury found that plaintiff's negligence did not contribute to his injuries, though he was guilty of negligence which necessarily caused them, and was not affirmatively erroneous.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 382–399; Dec. Dig. § 141.*]

**6. MASTER AND SERVANT (§ 289*)—INJURIES—SUFFICIENCY OF EVIDENCE—NEGLIGENCE.**

Plaintiff's evidence, in an action by a railroad engineer for injuries in a collision of his train with one on the main track at a station, *held* not to show plaintiff's contributory negligence as a matter of law in assuming that the track was clear because the switch target was white.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089, 1090, 1092–1132; Dec. Dig. § 289.*]

**7. MASTER AND SERVANT (§ 265*)—INJURIES—BURDEN OF PROOF—CONTRIBUTORY NEGLIGENCE.**

Acts 31st Leg. (1st Extra Sess.) c. 10 (Rev. Civ. St. 1911, art. 6649), providing that a railroad employé's contributory negligence shall not bar recovery for personal injuries, but the damages shall be diminished in proportion to the negligence attributable to him, did not abrogate the rule placing the burden of proving contributory negligence upon defendant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877–908, 955; Dec. Dig. § 265.*]

**8. NEGLIGENCE (§ 101*)—CONTRIBUTORY NEGLIGENCE—DIMINUTION OF RECOVERY.**

Even where plaintiff's proof shows that he is guilty of contributory negligence as a matter of law, under Acts 31st Leg. (1st Extra Sess.) c. 10 (Rev. St. 1911, art. 6649), providing that the effect of contributory negligence shall merely diminish recovery in proportion, the court could only direct the jury to diminish the damages in proportion to plaintiff's negligence.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 85, 163, 164; Dec. Dig. § 101.*]

**9. TRIAL (§ 260*)—INSTRUCTIONS—REQUESTS.**

Requested charges were properly refused where those which were correct were sufficiently covered by charges given.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

**10. DAMAGES (§ 221*)—CONTRIBUTORY NEGLIGENCE—DIMINUTION OF RECOVERY—FINDINGS.**

In a railroad employé's action for personal injuries under Employers' Liability Act (Acts 31st Leg. [1st Extra Sess.] c. 10; Rev. Civ. St. 1911, art. 6649), it is the better practice to have the jury find whether plaintiff was negligent, and, if so, to find the damages sustained by him and the extent his damages are diminished because of his own negligence.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 563–566; Dec. Dig. § 221.*]

Appeal from District Court, Harris County.

Action by T. H. Vernon against the St. Louis, Brownsville & Mexico Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Andrews, Ball & Streetman, of Houston, and Claude Pollard, of Kingsville (Coke K. Burns and W. L. Cook, both of Houston, of counsel), for appellant. John Lovejoy and Presley K. Ewing, both of Houston, for appellee.

McMEANS, J. T. H. Vernon brought this suit against the St. Louis, Brownsville & Mexico Railway Company, a corporation operating a railroad, to recover damages for personal injuries sustained by him while in the employment of defendant as locomotive engineer on account of a collision of the freight train he was engaged in operating with another freight train standing on defendant's main track at or near its station of Brazoria. Plaintiff alleged that his injuries were a proximate result of negligence of the defendant's agents or servants in charge of the standing train (1) in having that train on the main track, instead of on the siding, at its south end, and (2) in failing to give a reasonable or adequate warning in any manner of the standing train being on the main track, and (3) in failing to have the switchboard turned red, and the switch lined up for the approaching train plaintiff was operating. The defendant, after a general denial, specifically denied the particulars of negligence alleged against it, and pleaded for contributory negligence, that plaintiff approached the station and switch without having his train under control, and without maintaining a reasonable lookout, and at an excessive rate of speed, and in excess of the limit prescribed by its rule of 25 miles per hour. It was also alleged that these several negligent acts were the sole proximate cause of plaintiff's alleged injuries. It was further alleged that plaintiff, after he actually discovered the danger of collision, negligently failed to make all reasonable use of the means at hand to stop and avoid the collision, and that thereby he brought about his own injuries, and should not recover. It was further alleged in the alternative that, if plaintiff did not in fact see and appreciate that the extra freight train was on the main track in time to avoid injury, his failure to see and appreciate such fact was due to his negligent failure to keep a proper lookout,

and that such failure was the proximate cause of his injuries.

The plaintiff, in reply to defendant's answer, among other things, alleged: "That the train he had in charge, being a regular freight train, was superior and had the right of way over the blocking train, which was an extra freight train, and inferior and subordinate to said train in his charge; that, coming into said station late, as he did, he had a right to expect, and to rely on the expectation, that the defendant's employés in charge of said inferior train would exercise ordinary care, for his safety, in respect thereof, and under the rules and custom of the business, as practiced by defendant, have said inferior train on the siding at or near said station or at least not on the main track in the location it was, and that, if said train was so located, they would give him the signals required by the rules in such case, or at least reasonable and adequate warning of such location of the same, and in addition would line up the switch or siding for his train, and flag the same accordingly; that the defendant had established no rule requiring a superior train, such as that in plaintiff's charge at the time, to approach the station under control, as that term is used by the defendant, in circumstances similar to that on the occasion in question, but only that the train should not be run exceeding 25 miles an hour, and the same was being run by plaintiff well within that limit at the time, and he did in fact keep a proper lookout, as he approached and came into the station, and had the train under control, all that was required of him, and after his actual discovery of the blocking train on the main track he used all reasonable means at his command to avoid collision or injury, and he was throughout in the exercise of that ordinary care usual in such case, and which would have been ample to avoid a collision and injury had the employés of the blocking train, as he had the right to expect, and relied on their doing, exercised due care in the particulars aforesaid, but, instead of that, they were guilty of negligence in having said inferior freight train on the main track in the position and manner as done, and in failing to place such inferior train on the siding at or near said station, if not entirely, then as far as they could, and at the south end thereof, and also in failing to give said regular freight train in charge of plaintiff the signals required in such case, both by the defendant's rules and the custom of its business, or any reasonable or adequate warning of the location of said freight train on said main track, and also in failing to line up the said switch or siding for said regular freight train in charge of plaintiff, and flagging the same accordingly."

A trial before a jury resulted in a verdict and judgment in favor of the plaintiff for $17,500, from which the defendant has appealed.

The facts material to a proper disposition of this appeal are as follows: Plaintiff, Vernon, was in the service of defendant as a locomotive engineer, and on the morning of September 4, 1911, was engaged as such in the operation of a regular freight train going south on defendant's railroad. Under the rules and custom in force on defendant's road, the train being operated by plaintiff, being a regular train, was superior to irregular and extra freight trains also being operated over the road at the same time. Under the rule of the defendant, it was the duty of those operating the extra train, when meeting a train of the superior class, to place their train on the side track at least five minutes before the time of arrival of the train of the superior class, so that the latter would have a clear main line track. It was also a rule that, if a train of the inferior class does not arrive within the time the train of the superior class is ordered to wait for it, the latter may, without waiting longer, proceed on its way. It was also a rule that, whenever it became necessary to protect the front of the train, the head brakeman should go forward with danger signals to stop any train from that direction. This rule requires that the brakeman must, at the distance of 15 telegraph poles from his train, place one torpedo on the engineer's side; he must then continue to go at least the distance of 20 telegraph poles from the front of his train, and place two torpedoes on the rail on the engineer's side, 90 feet apart, when he may return to a point 15 telegraph poles distant from the front of his train, where he must remain until an approaching train has been stopped, or until he has been recalled by a whistle of his engine. In case the head brakeman is unable to go forward, the rules require that the fireman be sent in his place. There was also a printed or time card rule requiring all trains to approach "the end of double tracks, junctions, railroad crossings at grade and drawbridges prepared to stop, unless the switches and signals are right and the track clear." There was a rule and custom on that road to approach all yards and yard limits under control; but there was testimony sufficient to justify the jury in finding that this rule and custom had been disregarded and abandoned. Yard limits are defined by yard limit boards or by the outer switches where there are no yard limit boards. At Brazoria there were no yard limit boards, and the yard limits there were defined by the outer switches. A railroad owned and operated by the state formed a junction there with defendant's road.

The defendant's regular train in charge of plaintiff as engineer was No. 547, and was a superior train under the rules, with the right of way to the main line over the train with which it collided, which was No. 545, and which, under the rules, was an extra, and not

of the same class as the regular train. A telegraphic order was advised to both trains, directing the regular south-bound, in charge of plaintiff, to wait at Brazoria until 9:20 in the morning for extra No. 545, north-bound. Plaintiff's train reached Brazoria that morning a little late, about 9:27. The evidence warrants the conclusion that plaintiff, coming into Brazoria after 9:20, had a right to assume that the extra, if at that time it had arrived, had been placed on the side track, and that the main line was clear for him to pass on through without stopping. Plaintiff's train reached Brazoria around a curve, and, after coming around the curve, when he crossed the bridge, plaintiff, being able to see only a short distance ahead, then saw the extra train, which afterwards proved to be on the main track, but which he then thought was on the side track, and could not then tell differently, and was confirmed in this view, because, under the rules, it should have been on the side track, or he should have been warned if it was not, and, besides, the switch target was turned white, which indicated that the switch was lined up for the main track, and not for the side track, when, under the evidence, it should have been lined up for the side track, if, for any reason, the standing train was left on the main track. If the switch had been lined up for the side track, the switchboard would have shown red, and not white. When plaintiff discovered that the extra train was on the main line, he was distant about 2½ to 3 telegraph poles from same; but he remained on his engine, using the means at his command to avert a collision, and only at the last moment jumped from the engine just before a collision took place, and was thereby injured.

The evidence warrants the conclusion and we find that the extra north-bound freight reached Brazoria in ample time to be placed on the side track before plaintiff's train reached there, but that this was not done, and the extra was left standing on the main line; that, notwithstanding the employés in charge thereof were apprised and knew that plaintiff's train was coming, they sent out no flagman, or otherwise gave warning to plaintiff that the main line was obstructed by their train, as the rules required them to do in such case, nor did they turn the switch for the side track, which would have caused the switch board to show red instead of white, although one of the crew had been sent back to do so, but with ample time neglected to do it. The excuses offered for not placing the extra on the side track were that the locomotive drawing it was in bad order, and did not have enough steam to have started again had it gone into the siding, and not enough steam to pump the brakes off, and, besides, there were cars on the side track in sufficient number to prevent the entire train to go in, and would have left a part of it on the main line. No excuse was offered, at least none has been called to our attention, for the failure of the crew of the extra to give the warnings to the on-coming regular that the main line was obstructed, as required by the rules. The speed limit on defendant's road was 25 miles an hour. Plaintiff came into Brazoria at a speed of 18 to 20 miles on hour, and his train was not under control as that phrase in the rules is understood. As before stated, however, there was evidence from which the jury might have found that the rule requiring trains to run into stations such as Brazoria under control and at a less rate of speed than 25 miles an hour had been habitually violated, disregarded, and abandoned.

On this point, the plaintiff testified: "I had my train under perfect control at that time with respect to the usage and custom of the business, as conducted by the defendant at that time. There was no rule that required me to have my train under control in the sense of being able to stop within the range of my vision; they had no such rule; I never received any instructions or orders to do that. The custom and course of the business as to superior trains coming into a station like that under the circumstances of this occasion—the inferior train was supposed to be in the siding; the superior train was not even supposed to know that they were on earth at that time, when I went into Brazoria after 9:20. There was no restraint on my speed in running through there at that time beyond this rule of 25 miles an hour. I did not receive any orders or instructions not to exceed or run at any less speed than that." He further testified: "As I came there, approaching the station, the switches appeared to be all right and clear. My belief was, until I discovered this extra on the main line, that it was that way; if it hadn't been, I wouldn't have went around there like I did. I would have went around there prepared to stop."

Another witness, Henry Teague, testified: "The target of the switch being white would indicate a clear track. * * * I said that a white target indicated that the main line was a clear track, clear for the main line. The switch indicated that you have got a clear track at the switch; you have got a clear main line."

[1, 2] The witness Rebuck's testimony on this point was substantially the same. However, there was other testimony that controverted theirs. Under all the evidence we conclude that the jury were authorized to find that the defendant's agents and servants in charge of the extra were guilty of negligence towards plaintiff in failing to have their train on the side track and the main line clear by the time of the arrival of the regular train, of which plaintiff was the engineer, or, if not, they were guilty of negligence toward him in failing to warn plain-

tiff that the main line track was obstructed by their train, and in failing to turn the switch for the side track, and that such negligence was a proximate cause of the plaintiff's injuries.

The court's charge to the jury was full, and fair, and an admirable presentation of the law as applied to the facts, and it is here given in full:

"(1) In passing on the issues submitted to you by the court, you must be governed by the law given in the court's instructions, which you will consider in their entirety, and not in separate and detached parts alone; but you are the exclusive judges of the facts submitted to your determination, and of the weight of the evidence, and of the credibility of the witnesses.

"(2) Under statutes now in force, known as the Employers' Liability Act, it is provided that a corporation operating a railroad in this state shall be liable in damages to any of its employés suffering injury proximately caused by negligence of its agents or employés, and that the fact, if a fact, that the injured employé may have been guilty of contributory negligence shall not bar a recovery, but that in such event the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employé. Under these statutes, an employer, such as defendant, is not an insurer of the safety of its employés, but negligence of its employés, if committed within the scope of their employment towards another employé, is chargeable to such employer, and deemed in law its own.

"(3) 'Negligence' as used herein means a want of ordinary care to another to whom care is due, and by 'ordinary care' is meant such care as an ordinarily prudent person would have exercised under the same or similar circumstances. 'Contributory negligence' means such act or omission on the part of a plaintiff as an ordinarily prudent person would not do or suffer under similar circumstances, which, concurring with a negligent act or omission of a defendant, becomes a proximate cause of an injury. By 'proximate cause' of an injury is not necessarily meant the nearest time or physical sequence, but is meant a cause without which the injury would not have happened, and from which the injury in question, or some like injury, might reasonably have been anticipated as a natural and probable consequence.

"(4) If you believe from the evidence that the defendant's employés in charge of the extra train, or any of them, had that train on the main track in the position you may find it was, or that such employés or employé failed to flag the regular freight train in charge of plaintiff, or to give any signal or warning of the location of said extra train on the main track, or that such employés or employé failed to line up the switch or siding for said regular freight train, then, if you further believe from the evidence that such conduct on the part of such employés, or any of them, in any or all of the particulars above submitted, was negligence towards plaintiff, that is, a failure to exercise towards him such care as ordinarily prudent persons would have exercised under the same or similar circumstances, and that such negligence, if any, was a proximate cause, as before defined, of alleged injuries to plaintiff, then he is entitled to recover, and, if you so find, return your verdict in his favor.

"(5) The burden is upon the plaintiff to prove the facts necessary to entitle him to recover, as above submitted to you by the court, and, unless such facts are proved by a preponderance of the evidence, to be considered by you in its entirety, then return your verdict in favor of the defendant. If you do not believe from the evidence that the employés, or any of them, in charge of the extra train, under and in view of the attendant circumstances, failed to exercise such care as an ordinarily prudent person or persons would have exercised under the same or similar circumstances, in having the extra on the main track in the position you may find it was, or in failing to flag or signal or warn the regular freight train in charge of plaintiff of the location of the extra on the main track, if they did so fail, or in failing to line up the switch or siding for said regular freight train, if they did so fail, or if you do not believe that the employés in charge of said extra train, or any of them, could, in the exercise of ordinary care, as before defined, reasonably have foreseen a collision and injury to plaintiff, or a like injury, as a natural and probable result of having the extra on the main track in the position you may find it was, or as a natural and probable result of failing to flag or signal or warn the regular freight train of the location of the extra on the main track, if they did so fail, or as a natural and probable result of failing to line up said switch or siding for the regular freight train, if they did so fail, then, in either or both of these alternative events, return your verdict for the defendant.

"(6) If you believe from the evidence that, under and in view of the rules relied on by the defendant, or the custom and usage of the business as you may find it, or independent of such rules and such custom or usage, the plaintiff approached or came into the yard, at the north opening of the switch in question, without having the train in his charge under control, such as the evidence may show you was proper, and that such act was a want of ordinary care, that is, a failure on his part to exercise such care as an ordinarily prudent person would have exercised under the same or similar circumstances, or if you believe that plaintiff so approached or came into such yard without keeping a proper lookout, and that such was a want of ordinary care on his part, or if

you believe that he so approached or came into such yard at a speed in excess of that at which a person of ordinary prudence would have operated the train under like circumstances, or in excess of 25 miles per hour, then he was guilty of negligence.

"(7) If you believe from the evidence that negligence on the part of plaintiff as just submitted to you, if any, was the sole proximate cause of alleged injuries to him, if any, or if you believe that, as he was approaching with the train in his charge, he saw and appreciated the fact that the extra freight train was on the main line in sufficient time for him, by the use of the means at hand, to avoid a collision or injury, and that he then failed to make all reasonable use of the means at hand to avoid a collision and injury, and thereby brought about his alleged injuries, if any, then return your verdict for the defendant. Under the second alternative just submitted, failure of plaintiff to use all reasonable means at hand to avoid collision or injury after he actually saw and appreciated the fact that the extra was on the main track, if he did so fail, would be the sole proximate cause of his injury, if any, and negligence, if any, of defendant's employés operating the extra train would in that event be a remote cause, and not actionable.

"(8) If you believe from the evidence that negligence on the part of plaintiff, if any, as submitted to you by the court, and negligence on the part of the defendant, if any, as submitted to you by the court, were concurrent proximate causes of alleged injuries to plaintiff, if any, then you will diminish the damages to plaintiff, if you find him entitled to recover, in proportion to the amount of negligence you find attributable to him.

"(9) If you do not believe from the evidence that plaintiff was guilty of any negligence on the occasion in question, as alleged by defendant, or submitted to you by the court, then you will not, if you find plaintiff entitled to recover, diminish his damages anything on account of contributory negligence.

"(10) If your verdict is in favor of the plaintiff, then you will, in view of and subject to the foregoing instructions, assess his damages at such sum as you believe from the evidence to be fair and just compensation for the injuries alleged and proved to have been suffered by plaintiff on the occasion in question, if any, taking into consideration as elements of damage, so far as shown by the evidence to be a natural and probable result of such injuries, if at all, mental and physical pain to him therefrom, if any, including such as he will in reasonable probability suffer therefrom in the future, if any, and also the reasonable value of time lost to him from such injuries down to the trial, if any, and also, such sum, if paid now, as will be fair and just compensation to him for his diminished capacity, from such in-

juries, to labor and earn money in the future, if any.

"(10a) If you believe from the evidence that the injuries complained of by plaintiff in his petition are in part the result of a former accident, then, to that extent, allow him nothing therefor, as you can take into consideration herein only such injuries as you find from the evidence proximately resulted from the accident in question, if any."

Appellant's first assignment of error complains of the eighth paragraph of the foregoing charge, which reads: "If you believe from the evidence that negligence on the part of the plaintiff, if any, as submitted to you by the court, and negligence on the part of defendant, if any, as submitted to you by the court, were concurrent proximate causes of alleged injuries to plaintiff, if any, then you will diminish the damages to plaintiff, if you find him entitled to recover, in proportion to the amount of negligence you find attributable to him."

The ground of complaint urged in the first, second, third, and fourth propositions under this assignment is that under the quoted paragraph of the charge the jury were permitted to find negligence on plaintiff's part in failing to come into the station of Brazoria with his train under control, and to combine as concurrent cause such negligence, if found, and negligence on the part of defendant, if found, in having the extra on the main track in the position it was, and in failing to flag the regular freight train in charge of plaintiff, and in failing to give any signal or warning of the location of the extra on the main line, and in failing to line up the switch or siding for the regular freight; whereas, it contends that it is the law that the negligence of the plaintiff so found would be the *sole* proximate cause, and the negligence of the defendant so found would be only a *remote* cause, and in this respect the paragraph was erroneous.

As we understand appellant's contention as presented in the very elaborate and able brief of its counsel, it is simply this: Conceding that appellant's servants were guilty of negligence towards plaintiff in some or all of the particulars above stated, and that without such negligence plaintiff would not have been hurt, yet the evidence showed that plaintiff was guilty of negligence in coming into the station of Brazoria without having his train under control (and we may concede that the evidence was sufficient to raise the issue of his negligence in that regard), and that without such negligence on his part he would not have been injured, and that therefore his negligence broke the causal connection between the negligence of the agents of appellant in charge of the extra in the particulars mentioned and the injury of plaintiff, leaving plaintiff's negligence the sole proximate cause of the injuries, and the defendant's negligence at most only a remote

cause, and that therefore he was not entitled to recover.

We will not undertake to follow at length appellant's argument in support of this contention. The contention here made would be applicable in determining liability of the defendant as it exists at common law and as applied by the courts of this state prior to the passage of the Employers' Liability Act. As we understand it, the rule urged by appellant is the same, in effect, as that formerly given by the courts of this state for the holding that contributory negligence of the plaintiff was an absolute bar to his right of recovery even where it was indisputably shown that the defendant's negligence was a contributing cause of the injury. Some of the authorities base the reason of the rule upon the view that, where plaintiff's negligence contributed to the injury, his contributory negligence breaks the causal connection between the injury and defendant's negligence; in other words, his negligence is the proximate cause, and not the negligence of defendant. Among the authorities that so hold are 2 Labatt on the Law of Master and Servant, p. 2234; 2 Cooley on Torts, pp. 1411, 1412, 1414; 1 Shearman & Red. on Negligence, p. 88; Wharton on Negligence, pars. 300, 303, 133. On the other hand, our Supreme Court has stated the reason of the rule as follows: "The reason why a person who, if guilty of contributory negligence contributing to his own injury, cannot recover is because the policy of the law will not ordinarily permit one to recover who is himself at fault." Hays v. Railway, 70 Tex. 607, 8 S. W. 493, 8 Am. St. Rep. 624. In Railway v. Sympkins, 54 Tex. 619, 38 Am. Rep. 632, it is said: "If a party be wrongfully on the track under such circumstances, or, being there, acts in such a way as to be himself the proximate cause of his own injury, he will be precluded from recovery on grounds of public policy, as being himself guilty of contributory negligence. Although the company's agents may have failed in proper watchfulness, the injured person is regarded as being himself too directly a cause of the injury to be allowed to complain. It is not that no wrong has been done by the company in the negligence of its agents, but that the injured party is precluded from complaining of that wrong." To the same effect, are Railway v. Adams, 44 Tex. Civ. App. 288, 98 S. W. 224, and Railway v. Olds, 112 S. W. 792. But the reason for the former rule that denied a recovery to a plaintiff whose own negligence contributed to his injury is beside the question now before us.

[3] That was the law before the adoption of the Employers' Liability Act, and it will be presumed that the Legislature knew the law at the time the act was adopted, and intended to take away from it some of its rigors. The act is as follows: "That in all actions hereafter brought against any such

common carrier by [or] railroad under or by virtue of any of the provisions of this act to recover damages for personal injuries to an employé. * * * The fact that the employé may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employé." Acts (1st Extra Sess.) 1909, p. 280; Revised Statutes 1911, art. 6649.

[4] This act changes the rule of the common law which precludes the injured employé from recovering where his negligence contributed to his injury, and substitutes therefor a denial of recovery for only such an amount as the jury may determine from the evidence is attributable to his negligence. The question here presented is not a new one in this court, for substantially the same question was presented and overruled in Houston Belt & Terminal Company v. Woods, 149 S. W. 376; writ of error refused. We quote from the opinion: "By a second proposition under the second assignment it is contended that it was error for the court in the part of the charge complained of to submit to the jury whether the negligence of defendant, if shown, in providing lighting which was insufficient and not reasonably safe was the proximate cause of the injury and death of John Woods, for the reason, as it contends, the undisputed testimony shows that the alleged injury to John Woods was caused by his own voluntary act in taking the lighted lantern into a place of danger, in violation of orders and instructions, when it was not necessary for him to do so, and that such voluntary act on his own part intervened between the alleged negligence of defendant and the injury, and became itself the proximate and supervening cause, without which the injury would not have occurred, thus leaving the alleged negligence of defendant remote in its relation to the injury, and not actionable in law. The claim of broken causal connection because of contributory negligence on the part of the deceased, if it could be allowed, would have the effect of entirely abolishing the doctrine of contributory negligence in every case. The negligence of defendant was a continuing negligence, and, if it resulted in the injury and death of Woods, was the proximate cause thereof, and the only effect of Woods' contributory negligence would be to bar a recovery therefor under the law as it stood prior to the adoption of the act of April 13, 1909; but, since the adoption of that act, the only effect of contributory negligence of the injured party would be, not to bar a recovery, but to diminish the damages in proportion to the amount of negligence attributable to the injured employés."

The first four propositions under the assignment are overruled.

By its fifth proposition under the first as-

.signment appellant asserts that under the eighth paragraph of the court's charge, above quoted, it was left for the jury to say whether or not, if plaintiff had been found negligent in not having his train properly under control, such negligence was a contributing or concurrent proximate cause with negligence of the defendant; whereas, it contends that the law is that such negligence of plaintiff, if shown, would necessarily be a concurrent and proximate cause, and refers to the cases of Railway v. McCoy, 90 Tex. 264, 38 S. W. 36; Railway v. Rowland, 90 Tex. 365, 38 S. W. 756; Culpepper v. Railway, 90 Tex. 631, 40 S. W. 386, and other cases in support of its contention.

In the cases referred to the court charged the jury on the question of plaintiff's contributory negligence, and submitted the question as to whether such contributory negligence was the proximate cause of plaintiff's injury in such a form as to mislead the jury, and to impress upon their minds that, although the plaintiff was guilty of negligence in doing an act which necessarily caused his injury, they might yet find for him, if they found it did not contribute to his injury, and it was held that such a charge was erroneous, and required a reversal of the judgment. No such vice is found in the portion of the charge here complained of. A similar complaint was made of a charge in Railway v. Lester, 99 Tex. 221, 89 S. W. 752, and our Supreme Court, in passing upon the point, uses the following language: "This question has been presented to this court so frequently of late that it suggests the propriety of calling the attention of the bar to the following cases upon which the objection is based [citing the McCoy, Rowland, and Culpepper Cases]. Chief Justice Gaines wrote the opinion in each of those cases, and carefully distinguished the charges being then examined from charges like this. The charges in those cases were held to be erroneous, because they submitted the question as to whether the negligent act contributed to the injury in such form as to mislead the jury, and to impress upon their minds that, although the plaintiff was guilty of negligence in doing an act which necessarily caused his injury, they might yet find for the plaintiff, if they found it did not contribute to his injury."

In Parks v. San Antonio Traction Company, 100 Tex. 222, 94 S. W. 331, 98 S. W. 1100, it is held, in effect, that a charge stating generally the law governing the defense of contributory negligence, which directs a verdict for defendant, if, from the evidence, such negligence is found to have existed, and to have proximately contributed to cause plaintiff's injury, is not affirmative error against defendant, though the evidence was conclusive that the act, if negligent, was also a proximate cause.

[5] We hold that the charge in the respect in which it is here complained of was not affirmative error, nor was it misleading or confusing as complained in the sixth proposition. The first assignment and all the propositions thereunder are overruled.

Under the second and third assignments of error appellant presents the proposition that the court erred in the ninth paragraph of its charge in telling the jury that, if they did not believe from the evidence that plaintiff was guilty of any negligence on the occasion of the collision, as submitted by the court, they would not diminish plaintiff's damages in the event they found he was entitled to recover, and in the tenth paragraph of the charge, which states the elements of damage. The contention here made is that it was error to confine the jury to the contributory negligence of plaintiff in the particulars pleaded by defendant and submitted in the charge, but that, if on the trial acts of plaintiff were proved which raised the issue of plaintiff's contributory negligence, they should have been submitted, although not alleged. It is contended that plaintiff's own testimony showed his contributory negligence, where he says, in effect, that he assumed that the main line was clear because the switch target showed white, and that he acted partly on this assumption in coming into the switch at the rate of speed he did. Defendant did not plead that plaintiff was contributorily negligent in this regard; but it argues that under the Employers' Liability Act the common-law rule in vogue in Texas that the burden upon the issue of contributory negligence is upon the defendant has been abrogated, or at least the rule that contributory negligence must be specifically pleaded is of necessity abolished by the act.

There can be no question, we think, that plaintiff's testimony did not make him prima facie guilty of contributory negligence as a matter of law, but at most only raised the issue of such negligence on his part, and that it did raise such issue is doubtful. He did not testify that he relied entirely on the switch target being white instead of red; but all his testimony shows that he reasonably anticipated the extra freight was on the side track as it should have been, or, if not, that the switchboard would have been turned to show red instead of white, lining up the track for the siding, and that, in addition, he would have received due warning, as he ought, of the presence of the extra on the main track, that, until he had reason to apprehend the contrary, it was proper for him to run his train at any rate of speed within the limit prescribed by the rule of 25 miles per hour, and that as soon as he did discover that the extra was on the main line he used every means at hand to avoid the collision and injury.

[6-8] It will be thus seen that the testimony not only did not show negligence on plaintiff's part as a matter of law on account of his assumption of a clear track because

of the switch target being white, but, if believed by the jury, he was thereby exonerated from any negligence whatever. But we cannot agree with appellant's counsel that the act referred to has abrogated the common-law rule placing the burden of pleading and proving contributory negligence of the plaintiff upon the defendant. The act itself does not abolish the defense of contributory negligence, but recognizes it. True, the defense is a qualified one; but to the extent it is allowed and recognized it is perfect. It will not allow the defendant to escape all the consequences of its wrong merely because the plaintiff has contributed thereto by his wrong; but it requires a defendant to respond in damages for·all the injuries its wrong inflicts, less the proportion thereof that the plaintiff contributes thereto by his negligence. When plaintiff alleges and proves facts which show that he has been hurt as a result of another's negligence, he has done all that the law requires of him in order to a recovery. If the defendant would escape so much of the consequences of its wrong as the plaintiff by his negligence has wrought to himself, then it should plead and prove it. Rosenbaum Grain Co. v. Mitchell, 145 S. W. 1188. It is only where the proof made by plaintiff shows that he is prima facie guilty of contributory negligence as a matter of law that the court is justified, without pleadings of defendant, to instruct a verdict for defendant, and under the act in question the court could, in such case, only instruct the jury to diminish in proportion to the amount of the negligence attributable to plaintiff. The assignments and propositions thereunder are overruled.

[9, 10] We will not discuss the remaining assignments of error presented by appellant in detail, because to do so would extend this opinion, already too long, beyond all reasonable bounds. It must suffice to say that we have carefully examined all the assignments and the several propositions submitted under them, and are of the opinion that no reversible error is pointed out in any of them. The special charges requested by defendant, the refusal to give which is the basis of several assignments of error, were properly refused, because such of them as were correct were sufficiently covered by the court's charge. Several of the special charges directed that in the event the jury found that plaintiff's injuries were contributed to by his negligence to find for defendant. These were incorrect, because they ignored the act providing that the effect of such contributory negligence is to diminish the damages only. The assignment which complains that the verdict of the jury is excessive must be overruled. There is nothing in the record to indicate that the jury found that the plaintiff was contributorily negligent, or that they diminished the damages suffered by him by reason of any such negligence on his part. The evidence, which we will not pause to set out or restate, was ample, we think, to justify the amount of the award. We suggest that in cases of this kind it would be the better practice to have the jury make a finding as to whether they find the plaintiff guilty of contributory negligence, and, if they do so find, then to find the amount of the damages he sustained, and also the extent they diminish his damages on account thereof. There being no reversible error in the record, the judgment of the court below is affirmed.

Affirmed.