ROGERS, J.
 

 Plaintiff sued for $263 alleged to be due for rent by the defendant, and in the enforcement of his lessor’s lien provisionally seized defendant’s effects in the rented premises. By agreement of counsel the seizure was released on a bond of $300, signed by defendant’s attorney as surety. Later, plaintiff obtained judgment on his claim. The amount of this judgment was reduced by payments made by defendant from time to time until, with the addition of the costs, it represented a decreased indebtedness of $192.90. This suit was instituted in the First city court of New Orleans against the judgment debtor and his surety on the bond to recover the amount of the said indebtedness, the property represented by the bond having practically disappeared. The court of first instance gave plaintiff judgment, but the judgment against the surety was reversed by the appellate court, 131 So. 485, and the ruling of the latter court is now before us for review.
 

 Among other defenses, the surety alleged that he was not liable on the bond because it was not based on an order of court. The Court of Appeal sustained this defense on the authority of Honeycutt v. Whitten, 152 La. 1046, 95 So. 216.
 

 A defendant’s right to bond property provisionally seized arises under article 287 and article 2S9 of the Code of Practice. The history and effect of these articles is set forth in the leading case of Conrad v. Patzelt, 29 La. Ann. 465.
 

 As is shown by the opinion in that ease, the original Code of Practice authorized the issuance of the writ of provisional seizure in certain cases, but did not authorize the defendant to bond the seizure as in proceedings
 
 *1010
 
 by attachment and sequestration. The process was made to apply to ships and other vessels, and, because of their inability to bond, masters and owners frequently submitted to unjust demands in order to prevent the costly idleness of their vessels pending the decision of the suit. The Legislature' remedied this situation in 1S39 by the adoption of Act No. 53, § 12, providing that, “Whenever ships or other vessels be provisionally seized, the defendant shall be permitted to have the seizure set aside on executing a bond in favor of the plaintiff, as in eases of attachment.” Under article 259 of the original Code, the release bond in attachment cases was absolute, without qualification, that the defendant would satisfy such judgment as might be rendered against him in the suit.
 

 In 1852, article 259 was amended so as to permit defendant to obtain the release of the attached property on executing bond conditioned to “satisfy such judgment,
 
 to the value of the property attached,
 
 as may be rendered against him in the suit pending.” Release bonds of ships or other vessels were subject to this modification. Hence, as the law then stood, ships and other vessels provisionally seized could be released on bond, but property provisionally seized for rent could not.
 

 But in 1867, by an act approved on July 6th (Act No. 205), the Legislature declared that, “whenever ships, vessels,
 
 or any other property,
 
 are provisionally seized, the defendant shall be permitted to have the seizure set aside, on executing his obligation with a good and solvent security for whatever amount the judge may determine as being equal to the value of the property to be left in his possession,
 
 or
 
 the condition of said bond to be that he will satisfy such judgment as may be rendered against him or return the property.”
 

 This provision, with the exception of the italicised word “or” between the words “possession” and “condition,” is incorporated in article 289 of the Code of Practice, third paragraph.
 

 In 1868, by act approved September 9th (Act No. 60), the Legislature again amended the Code of Practice relative to provisional seizures. -This statute applies exclusively to lessors, and permits the lessee in all cases to have such seizure released, “upon executing a forthcoming bond or obligation, with a good, solvent security for the value of the property to be left in his possession, or for the amount- of the claim, with interest and costs; provided, further, that the value of the property shall be fixed by the sheriff, or one of his deputies, with the assistance of two appraisers selected by the parties, twenty-four hours’ notice being previously given to the lessor or his counsel to select an appraiser.” This act now forms part of article 287 of the Code of Practice.
 

 As pointed out by the court in its opinion, at page 472 of 29 La. Ann., there is no conflict between the Codal articles, and both are in effect. Hence, no matter whether property be provisionally seized by a lessor for his rent or by any other person for any of the other specified causes, the defendant is
 
 permitted
 
 to have the seizure released (a) by giving bond for whatever amount the judge may determine is the value of the property, conditioned to satisfy such judgment as may be rendered against him or to restore the property and (b) by executing a bond for the value of the property, or the amount of the claim, to be contradictorily fixed by appraisement, without any action by the judge being-required thereon.
 

 The Codal articles are remedial in their nature. One article applies to every possible case of provisional seizure, and the other article applies to seizures by lessors alone. Both articles are intended for the cc\nvenience
 
 *1012
 
 and benefit of tbe defendant only, and if a' lessee he may avail himself of the relief afforded by either article.
 

 Neither of the Oodal articles is referred to in the bond under review. But tbe language of the instrument indicates rather strongly that it was executed under
 
 the
 
 general and not tbe exclusive law regulating tbe dissolution of provisional seizures on bond. Thus, after describing the property and reciting its seizure and detention by the constable, the bond declares that tbe property bas been released and delivered to tbe defendant
 
 hy order of court,
 
 upon tbe execution and delivery by tbe surety of tbe obligation. And tbe condition of tbe instrument is that tbe defendant “shall not send the above described property out of the jurisdiction of the Court, and that be will faithfully present tbe same in case be should be decreed to restore the same to the said Constable or shall satisfy said judgment as may be rendered in the suit pending as above mentioned,” etc.
 

 But conceding that the defendant desired to avail himself of tbe
 
 permission
 
 granted by article 289 of the Code of Practice, and, therefore, should have applied to tbe judge to fix the amount of tbe bond, tbe question then arises, Could and did tbe defendant and his surety waive the statutory requirement?
 

 The surety contends that the rule of Civ. Code, art 11, invoked by plaintiff, that individuals can renounce what the law has established in their favor, when tbe renunciation does not affect tbe rights'of others and is not contrary to tbe public good, is not applicable to judicial bonds, which tbe sheriff or constable can only accept in the manner and under tbe conditions prescribed by law.
 

 The instrument under review is, properly speaking, a legal and not a judicial bond. A legal bond is that which is given pursuant
 
 to
 
 law. A judicial bond is that which is furnished under judicial direction. But tbe Code seems to treat legal and judicial bonds as belonging to tbe same class, and tbe term
 
 judicial
 
 bas been applied to bonds furnished pursuant either to law or to judicial decree. Macready v. Schenck, 41 La. Ann. 456, 6 So. 517.
 

 It is a matter of no importance by what name the bond be called, since, conceding that article 289 of tbe Code of Practice is appropriate, it was executed under tbe authority of a special provision of law.
 

 Tbe surety on tbe bond contends that all tbe statutory prerequisites must be strictly construed, rigidly enforced, and cannot be waived. He cites, in support of tbe contention, Honeycutt v. Whitten, 152 La. 1045, 95 So. 216, 218; Urquhart v. Carvin, 25 La. Ann. 218, and a number of other cases.
 

 It is true in Honeycutt v. Whitten the court remarked that, “Tbe permission to bond constituted the judicial sanction for tbe release of the seizure, it was jurisdictional, and was an essential prerequisite to authorize the sheriff to substitute an obligation in lieu of the property which be held under seizure.” These remarks followed tbe statement that tbe defendant bad properly applied to tbe judge, under tbe letter of article 287 to be permitted to have tbe seizure released upon a forthcoming bond.
 

 TChe quoted statement was purely obiter on tbe part of tbe court, since tbe judge, upon defendant’s application, bad signed tbe order for tbe release of tbe property on a forthcoming bond. Tbe real issues in tbe case were whether husband and wife could bind themselves as cosureties on a forthcoming bond, and whether tbe lessor and lessee could waive tbe appraisement required by tbe Oodal article in fixing tbe amount of tbe bond. Furthermore, it was error to say that tbe defendant properly applied to tbe judge to be
 
 *1014
 
 permitted to have the seizure released on the forthcoming bond. As we have heretofore shown herein under neither article 287 nor article 289 of the Code of Practice is the judge’s permission necessary for the bonding of the seizure. Such permission is expressly accorded by the articles themselves. The judge’s sole function is, under article 289, to determine the value of the seized property and to fix the amount of the release bond in an amount equal thereto. Hence, the permission of the judge to bond is not jurisdictional, and is not a prerequisite to the release of the seizure by substituting the release bond for the property, if his order fixing the amount of the bond can be waived.
 

 In Urquhart v. Carvin, it was admitted that, at the time the bond was given, there was no law authorizing the release of property provisionally seized, and the question at issue was whether the bond could be sustained as a conventional obligation. The court held against the proposition on the ground that the plaintiff: was not a party thereto, and hence there was no reciprocal obligation on his part.
 

 The other cases relied on by plaintiff are authority for the well-recognized rule governing statutory bonds that all surplusage will be rejected and all omissions supplied.
 

 But we understand that this rule of strict construction applies only to matters of substance and not to mere matters of form. And we know of no good reason why parties to the bond cannot waive any irregularity in the bond or in the manner of its execution.
 

 In the ease presently before us, it is not seriously disputed that the bond sued on was given to the constable without an order of court by agreement of counsel. And it is certain that the surety by executing the bond obtained the release of the property in the possession of the constable. On receiving the bond, the constable assigned his right, title, and interest therein to plaintiff, who made no objection thereto. And plaintiff has instituted this suit as the beneficiary under the obligation. In these circumstances, we think the formality of the judge’s order fixing the amount of the bond as prescribed by the Codal article was waived by the parties.
 

 The general rule as stated in 17 R. C. L., at page 250, is to the effect that as respects irregularities generally a plaintiff ordinarily has the right to accept them, and, if he does so, there is no rfeason why the bond should not be binding on the signers. “Thus” says the author, “while an execution plaintiff can object to a forthcoming bond taken without sureties as invalid, if he has made no such objection, and it has been received as a good bond, no one else can object to its validity.”
 

 Under our own jurisprudence, the general rule seems to be that a mere irregularity in failing to comply with a statutory requirement will not invalidate a bond executed in pursuance to the statute.
 

 Thus the case of Honeycutt v. Whitten, referred to supra, itself, is authority for the proposition that, notwithstanding the law under which statutory bonds are given must be read into them in order to construe and give effect to their language, it does not prohibit the parties from waiving the formality of appraisement prescribed by article 287 of the Code of Practice in order to fix. the amount of the forthcoming bond. By a parity of reasoning, the same rule of law does not prevent the parties from waiving the formality of the judge’s order prescribed by article 289 of the Code of Practice as the method of fixing the amount of the release bond.
 

 In Lartigue v. Baldwin, 5 Mart. (O. S.) 193, the court held the surety on an attachment bond in damages, rejecting, among others, the defense that the bond' was irregular, saying
 
 *1016
 
 that such allegations from the mouth of the obligor ought not to be listened to. And in Todd v. Gordy, 29 La. Ann. 498, an intervener and his surety were held on a bond illegally issued, on which the intervener was permitted to take the property under the obligation to restore it when so ordered, or to pay its value.
 

 In Conrad v. Patzelt, referred to supra, the bond whereby the lessee obtained the release of his property provisionally seized was given under neither article 287 nor article 289 of the Code of Practice. It was an
 
 absolute
 
 bond to satisfy whatever judgment might be rendered against the lessee,
 
 embracing no alternative obligation.
 
 Nevertheless, the court heid that it was a valid obligation and stood in the place of the property released from seizure upon its execution and delivery.
 

 In State v. Williamson, 135 La. 662, 65 So. 877, 879, the issue was as to the forfeiture of a bail bond. The surety set up, among other defenses, that the bail bond failed to show it was accepted by the sheriff or was filed in court prior to the day of trial. But the court rejected this defense, stating that “the surety, upon the execution of the bond sued on, obtained the release of the accused, who was then in custody of the sheriff, by giving the bond here forfeited to the sheriff, and he is estopped from either setting up the irregularity of the bond or of the proceedings under which it was allowed. State v. Doyle, 42 La. Ann. 640, 7 So. 699; Marr’s Crim. Jur. § 206, and authorities there cited.”
 

 A forthcoming or release bond grows out of the proceedings in a 'case not less than a bail bond. It is a part of the process of the suit and follows its fate. If the surety on a bail bond, who secures the release of an accused from legal custody, is prohibited from setting up the irregularity of the bond or the proceedings, we see no legal or logical reason why the surety on a bond, who secures the release of movable effects from lawful custody, should not also be precluded from pleading the irregularity or informality of the bond, when sued on his obligation.
 

 Another defense of the surety to plaintiff’s action is, that he was released from his obligation because plaintiff agreed to permit defendant to pay the amount of the judgment in monthly installments. The surety contends this agreement novated the obligation of the bond, and created a new obligation between plaintiff and defendant, to which obligation he was not a party. In support of this contention, Civ. Code, arts. 219S and 3063, and Allison v. Tilomas & Rosenfeld, 29 La. Ann. 732 are cited. Article 219S relates to the discharge of a surety by the novation made between the principal debtor and the creditor. Article 3063 provides that an extension of time to the debtor without the surety’s consent discharges the surety. And Allison v. Thomas & Rosenfeld announces the doctrine that even after judgment is rendered the surety on a release bond will be discharged by an agreement made between the parties litigant, without the surety’s assent, which defers payment or in any manner impairs the recourse of the surety against the principal.
 

 But the rules of law contained in the Codal articles and announced by the cited case are not applicable to the facts of this case. •1
 

 The facts as disclosed by the present record are, substantially, as follows, viz.: The original judgment between the parties litigant was rendered on December 21, 1925, and on January 19, 1926, the judgment creditor-caused a fi. fa. to issue. An agreement was then entered into between the parties and their attorneys, the surety being defendant’s attorney, under which defendant was to be permitted to pay the judgment in monthly installments. On January 22, 1926, a payment
 
 *1018
 
 of $25 was made on account of the judgment through the surety as defendant’s attorney. The fi. fa. was in due course returned “not satisfied.” Between January 22, 1926, and October 2, 1926, both inclusive, the surety as defendant’s attorney sent seven checks of varying amounts to plaintiff’s attorney to be applied on the judgment. On June 2, 1927, another fi. fa. was issued and served on the surety. This writ was returned nulla bona. On November 22, 1927, a third fi. fa. was issued, under which a few of the movables provisionally seized were retaken possession of by the constable. After this occurred, the judgment debtor, with the assent of the surety, agreed to pay the judgment creditor $10 every two weeks until the balance due on the judgment was paid. From December 9, 1927, until some time after February 13, 1928, the judgment debtor made five payments, aggregating $30, and then stopped paying altogether. Thereafter, the property seized under the third fi. fa. was sold, bringing only $7.50.
 

 Subsequently, a rule was taken on the surety to show cause why all the movables originally seized should not be delivered to the constable, or why he should not pay the amount of the judgment. The rule was dismissed on the surety’s exception of no cause of action. This suit was then brought against the principal and the surety for the balance due on the judgment at the time of its institution. From all of which it is perfectly plain that the extension of time granted to the judgment debtor for the payment of the judgment was obtained not only with the assent, but with the active co-operation of the. surety. And his contention that such extension of time served to release him from his obligation under the bond cannot be upheld by the court.
 

 A further defense of the surety is, that he was not placed in default by a demand upon him to produce the property released under the bond. We do not think this defense is well founded.
 

 In Walden v. Philips, 11 Rob. 123, which was an action against the surety on a release bond given for property provisionally seized, this court held that the action would lie after plaintiff had issued a fi. fa. under his judgment, which writ was returned “no property found after demand of the parties”; i. e., the lessor and the lessee.
 

 The surety was given formal notice of his principal’s default on June 7, 1927, when the’ fi. fa. issued on that date was served on him as the attorney of the defendant. And, moreover, the rule taken in the original proceeding against the surety, which was dismissed on his exception, specifically required the surety to produce the property or to pay the amount of the bond.
 

 The surety finally contends that all the property covered by the bond, except the pressing machine, was either returned or tendered to the constable. The contention is refuted by the facts in the record. The property provisionally seized was valued for the purpose of the release bond at $300, and the property retaken by the constable under the third fi. fa. issued at the instance of the judgment* creditor was sold for $7.50. And the' evidence shows that, in addition to the pressing machine, the defendant disposed of the. cash register and the refrigerator a few days after the seized property was released on the bond. The fact that the pressing machine was incumbered with a chattel mortgage can have no bearing on the surety’s obligation under the bond which 7he voluntarily signed.
 

 For the reasons assigned, the judgment of the Court of Appeal is annulled, and the judgment of the First city court is reinstated, and made the final judgment of this court.